## MARCIA L. TAYLOR *vs.* THE TOWN OF MONROE.

In a suit against a town for an injury from a defect in a highway, where the alleged defect was the want of a railing along an elevated part of the road, and the injury occurred in a manner so peculiar and exceptional as to put the necessity of the railing to a test that ordinary travel would not furnish, it was held that the experience of others who had passed safely along the same road was not pertinent, and evidence of it inadmissible in behalf of the town.

Professional road builders, of experience in the business, who had examined the road, held to be proper witnesses as experts, and their opinions admissible, in connection with the facts sworn to by them, as to the necessity of a railing and the safe condition of the road.

The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of it, but whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the questions at issue.

The elements that enter into the question of the reasonably safe condition of a highway or bridge are numerous and often difficult to be described; and for this reason it has long been the practice in this state to admit upon such a question the opinions of those who are not experts, but who have personal knowledge of the place in question, in connection with facts stated by them.

The plaintiff alleged in her declaration "that she had been prevented from attending to her ordinary business." Held that under this allegation she could not show, for the purpose of enhancing damages, the loss of earnings in a special employment requiring skill and training.

TRESPASS ON THE CASE for an injury from a defect in a highway of the defendant town; brought to the Superior Court in Fairfield County, and heard in damages, after demurrer overruled, by *Pardee, J.* The court found the following facts:

Between the hours of seven and eight o'clock of the afternoon of the 10th day of August, 1871, the plaintiff, a single woman about thirty years of age, accompanied by her nephew, a boy about fifteen years old, was driving a horse attached to a light wagon along a highway running northerly and southerly within the limits of the town of Monroe. This highway passes down a steep hill about thirty rods in length, twenty-five feet from the foot of which and forming part of the highway is a bridge twelve feet in length, and of the same width, elevated four feet above a stream which crosses the highway.

Along the easterly side of the bridge a pole resting on crotches set in the ground, one at either end of the bridge, had been placed for the purpose of a railing; at the northerly end it was about eight inches in diameter and extended a few feet from the bridge.

When the plaintiff began to descend the hill the horse took fright and ran rapidly down, mostly on the left side of the worked way. When she came to the crotch supporting the pole above mentioned, the left wheel was so far over the left edge of the raised highway as to come outside of the crotch, bringing the axletree against the same, and the body of the wagon under the end of the pole. The crotch was thereby drawn from its place, the pole was raised, the wagon was overturned, and the plaintiff was precipitated into the bed of the stream, and one end of the pole was thrown across her breast, whereby she was wounded, one rib being torn from its attachment to the breast bone, and she suffered a permanent injury to health, for which damages were to be assessed.

At the northerly end of the bridge the highway was so raised above the adjoining ground as to endanger the public travel, and on said 10th day of August, 1871, there was not a good and sufficient railing or fence on the easterly side thereof, and the highway was then and there out of repair, all of which was in consequence of the negligence of the town of Monroe. There was no contributory negligence on the part of the plaintiff.

Upon the hearing the defendants claimed, and offered evidence to prove, that the highway was not so raised as to endanger travel; that no railing was required to make the same safe for public travel; that the highway was an ancient one and was constructed and maintained in conformity to the experience of skilled road-builders; that the injury was not sustained by reason of the want of a railing, inasmuch as the left wheel was over the left edge of the raised highway and outside of the crotch when the wagon struck the same; and that the fact that the crotch was drawn from its position and thus let the pole go off with the wagon, in no way contributed to the injury, but that a firm and immovable railing would have caused a more serious injury to the plaintiff.

For the purpose of supporting these claims the defendants asked of divers persons acquainted with the road, bridge and railing, the following question: "Has any accident or injury resulted to any person from the want of a railing on the east side of the north approach to the bridge or on account of the insufficiency of the railing as it has existed at the bridge and causeway?" This question was objected to by the plaintiff and excluded by the court.

The defendants then placed upon the witness-stand two witnesses who were professional road-builders of twenty-five years experience in the business, and each of whom had seen and examined and described the road and bridge and railing and their surroundings at the place where the injury happened; and then the defendants' counsel asked each of them the following questions:

1. What is your opinion, based upon the facts you have testified to, as to whether this causeway, at any point north of the railing, is so raised above the adjoining ground as to require a railing in order to render public travel reasonably safe?

2. What is your opinion as a skilled workman in the construction of roads, as to whether or not the road from the bridge to the foot of the hill, supposing it to be as it was at the time of the accident, was reasonably safe and convenient for public travel?

3. Had a good and sufficient railing been erected and maintained at the time of this accident on the side of that part of the highway where the accident occurred, and where the highway is raised above the adjoining ground, would such railing have increased or diminished the danger to a carriage and occupant thereof, taking the line of travel used by the carriage occupied by the plaintiff and going at the rate of speed testified to by the plaintiff?

4. Is or not the elevation of the embankment and the slope of the bank, and the depth of the ditch or gutter such, north of the end of the pole, that if an ordinary vehicle were driven off the bank in the ordinary mode of driving, it would overturn the vehicle or cause any accident?

To each of these questions the plaintiff objected and the court excluded the same.

The plaintiff claimed that by reason of the accident she had two of her ribs broken, and that the effect of the injury had been to subject her to difficulty of breathing at times, in the nature of asthma; that she was troubled at times to exhale the air from her lungs, and that these attacks would be brought upon her by similar conditions of atmosphere that would induce attacks of asthma in those disposed to asthma, and that by reason of these attacks she was incapable of lifting any considerable weight or performing any laborious work; and for the purpose of enhancing her damages, she introduced herself and other witnesses, who testified that for many years next before the accident she had been accustomed to work daily in a button shop as a button maker, boarding at her father's and walking about one mile to her daily work, and that in this employment she had been accustomed to earn from $300 to $350 a year, and that by reason of this accident she had been unable to perform this service and had sustained the loss of from $300 to $350 yearly since the accident to the day of the trial. To this evidence the defendants objected, on the ground that there was no averment in the declaration with regard to such special employment and earnings. The averment of the declaration relating to the matter was that by means of the injury the plaintiff "had been prevented from attending to her ordinary business." The court overruled the objection and received the evidence.

The court rendered judgment for the plaintiff to recover of the defendants the sum of $3,000. The defendants moved for a new trial for error in the rulings of the court.

*W. B. Wooster* and *W. K. Seeley*, in support of the motion.

1. The court erred in ruling out the evidence offered by the defendants, that no accident had been known to happen from the insufficiency of the railing. *Calkins* v. *City of Hartford*, 33 Conn., 58; *Congdon* v. *City of Norwich*, 37 id., 418; *Littlefield* v. *City of Norwich*, 40 id., 409.

2. The opinions of road-builders, as experts, were admis-

sible upon the points as to which the enquiries of them were made. *Porter* v. *Pequonnoc Manufacturing Co.*, 17 Conn., 249, 256; *Dunham's Appeal from Probate*, 27 id., 198; *Kearney* v. *Farrell*, 28 id., 317, 319; *M'Kee* v. *Nelson*, 4 Cowen, 356; *State* v. *Pike*, 49 N. Hamp., 423, 425; *Cram* v. *Cram*, 33 Verm., 19.

3. The defendants were not required to provide for so extraordinary an emergency as that of the plaintiff. It would be requiring more than reasonable safety. *Lyman* v. *Amherst*, 107 Mass., 339.

4. The allegation in the declaration that the plaintiff had been "prevented from attending to her ordinary business," did not warrant evidence as to her earnings as a button maker. *Baldwin* v. *Western R. R. Corporation*, 4 Gray, 335; *Squier* v. *Gould*, 14 Wend., 160; *Wade* v. *LeRoy*, 20 How., 44.

*H. S. Sanford* and *G. Stoddard*, contra.

1. The evidence as to others having passed safely over the road was properly rejected. The fact that other persons had crossed without injury would not show, or tend to show, the bridge and causeway to have been properly railed, as a large majority of travelers would doubtless pass with safety a bridge the only defect of which was the want of a railing. The decision in *Calkins* v. *City of Hartford* was upon the ground that the defect or obstacle which caused the plaintiff's injury, was of such a nature as of necessity to have been encountered and tested as to its character by all persons who passed the point in question. That element is entirely wanting here. *Calkins* v. *City of Hartford*, 33 Conn., 57; *Kidder* v. *Inhabitants of Dunstable*, 11 Gray, 342.

2. The opinions of the road-builders as experts was properly ruled out. The court is required to allow the opinion of witnesses where the subject of inquiry is not susceptible of direct proof, where the witness is unable to detail and describe the facts and circumstances so that the court can form an intelligent conclusion, and where the trier, from want of experience and from the peculiar nature of the subject, is unable to draw proper inferences from facts proved. The object of

each of the questions was to show that the approaches to the bridge on the north were not so elevated as to require a railing. The precise spot covered by the questions was capable of an accurate description from measurement, and had been so described by these witnesses. Cannot the court be said to be capable of intelligently deciding whether a vehicle, if drawn off the causeway described, would be likely to be overturned, or whether a person thrown from such an overturned vehicle would be likely to receive injuries? This is certainly not such a question of science as requires the testimony of skilled witnesses. 1 Greenl. on Ev., § 440; 2 Taylor on Ev., §§ 1273, 1274, 1276; Note to *Carter* v. *Boehm*, 1 Smith Lead. Cas., (H. & W. ed.,) 772; *Jones* v. *Tucker*, 41 N. Hamp., 546; *Marshall* v. *Columbia Mut. Ins. Co.*, 27 N. Hamp., 157. Besides, the witnesses offered did not possess the necessary qualifications to testify as experts on this subject. Persons who use roads, not those who build them, are qualified from experience to state the safe or unsafe condition of the place in question. In addition to this, the third question is irrelevant. That through the negligence of the defendants the plaintiff was saved a more severe injury, would be a novel defense to an action for an injury admittedly caused by the defendants' negligence.

3. The court properly admitted evidence as to the character of the plaintiff's employment and as to her earnings. The declaration states that in consequence of the injuries received the plaintiff had been prevented from carrying on her ordinary business, and that her injuries were of a permanent character. This allegation is sufficiently specific to warrant the admission of the testimony. 2 Hilliard on Torts, ch. 37, § 22; Shearm. & Red. on Negligence, § 606 and note; *Wade* v. *LeRoy*, 20 How., 34; *Curtis* v. *Rochester & Syracuse R. R. Co.*, 18 N. York, 534.

Loomis, J. The first question which the motion presents is, whether the defendants, for the purpose of showing that the condition of the road, bridge and railing at the time of the accident was not dangerous or unsafe, could ask witnesses

acquainted with the place the following question:—"Has any accident or injury resulted to any person from the want of a railing on the east side of the north approach to the bridge, or on account of the insufficiency of the railing as it has existed at the bridge and causeway?"

The object of the proposed evidence was to show that actual use had tested the way and had shown it to be safe. If the evidence had met the precise point aimed at, it would have been admissible; but to reach that object the use and experience of others relied upon must have been of a nature to have tested the alleged defect; or, in other words, it must have been a use and test substantially similar to that of the plaintiff.

In *Calkins* v. *City of Hartford*, 33 Conn., 57, the alleged defect was ice covering the entire width of the side-walk, on which the plaintiff slipped and fell while walking over the same; and evidence that other persons had walked over the same place without accident or inconvenience was held admissible to show that there was no such ice there, or that it was not dangerous.

This evidence was admitted on the ground that the defect was of such a character as that the attention of the witnesses must have been called to it if it existed, and that their experience of its effect must have been, or would naturally be, substantially the same as that of the plaintiff. And the court distinguished the case in principle from the cases of *Kidder* v. *Dunstable*, 11 Gray, 342, and *Aldrich* v. *Pelham*, 1 Gray, 510, and *Collins* v. *Dorchester*, 6 Cush., 396, where in two of the cases, evidence that other teams or carriages passed the place where the plaintiff claimed to have been injured, without accident, and, in the other case where, in attempting to pass an accident had happened, was held inadmissible.

In the present case the accident occurred in a very peculiar and exceptional manner. The plaintiff's horse took fright when beginning to descend the hill, and descended the hill on the left side of the worked way, and before the carriage reached the bridge the left wheel was so far over the left edge of the raised highway, that the axle of the wagon struck directly against the end of the railing, thereby causing the injury to the plaintiff.

No similar experience or trial of the alleged defect was attempted to be shown; but the evidence relied upon merely tended to show that, in the ordinary use of the highway for many years, no accident had occurred at that place. The same facts could doubtless have been proved if no sign of a railing had ever existed at the place. All persons, previously, had passed safely because they had kept the traveled path, and the absence of defects inside the way proved nothing as to defects outside. The court therefore properly rejected the evidence.

2. The next question is, whether the opinions of the "two professional road-builders of twenty-five years experience in the business," who "had seen and examined and described the road and bridge and railing and their surroundings at the place where the injury happened," ought to have been received in answer to the four special interrogatories mentioned in the record.

If these witnesses were experts and the subject matter was proper for their opinion, it must be conceded that the evidence ought to have been received in answer to at least three of the questions stated.

A special objection is made to the third inquiry, that it involves the absurd proposition as a defence, "that through the negligence of the defendants the plaintiff was saved a still more severe injury."

But we do not so construe the purport and purpose of this question. We think the object was to show that the road was reasonably safe as it was, that the safety and convenience of public travel did not require *such a railing* as the plaintiff claimed should have been erected, because, taking her line of travel, the effect would have been, not to diminish, but to increase the danger.

The rule as to experts is, that "in cases involving questions of science and skill, or relating to some art or trade, experts are permitted to give opinions; the principle embraces all questions except those, the knowledge of which is presumed to be common to all men. So the business which has a particular class devoted to its pursuit, is an art or trade within

the rule." *Rochester & Syracuse R. R. Co.* v. *Budlong*, 10 Howard's Pr. Rep., 289.

Though the rule as stated is well settled, yet there is often a practical difficulty in applying it to the facts and circumstances of the particular case, especially where the general subject matter, as in this case, is open to the observation of many persons. If this case falls pretty near the line, we think it is clearly on that side of the line that permits expert testimony.

The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue.

In *Smith* v. *Gugerty*, 4 Barb., 614, it was held that a mason, as an expert, might be asked, "how long it would take to dry the walls of a house, so as to render it fit and safe for human habitation." Here it is obvious that a great many persons would have some knowledge of the subject, and it could be plausibly argued that those persons who had prematurely moved into newly constructed houses would be the proper experts, if any. In the case at bar the plaintiff claims that "persons who use roads, and not those who build them, are the proper experts." The similar objection suggested in the case just cited would have a better foundation than it has here, because persons who use roads do not necessarily have their attention called to points of safety or danger in the construction of the road; and moreover the users of a road do not constitute any recognized class devoted to any business, trade, art or profession, connected with such use, which could give any value to their opinions.

But road-builders must of necessity adapt their work to the purposes for which it is intended, to wit, the safety and convenience of public travel, and in so doing they must keep in mind all the elements that enter into the question of safety

and convenience, and thereby they acquire a peculiar knowledge and experience that gives special value to their opinions upon the subject.

The plaintiff further claims that the precise spot to which the questions referred was susceptible of accurate description by measurement and therefore expert testimony was inadmissible. We do not accept this position as correct in this case.

The question whether a highway is so raised above the adjoining ground as to require a railing to make it reasonably safe, might be so determined in extreme cases, as where the descent from the shoulder of the road to the adjoining ground is very abrupt and great, or where, on the other hand, it is, very slight. But in ordinary cases it could not be so determined. There is no arbitrary rule that so many feet of descent on the side, coupled with so many feet of width in the traveled way, will make a railing necessary, neither can it be determined by the mere fact that a wagon could be upset by going into the ditch on the side of the road.

The elements that enter into the question of reasonable safety are numerous and often difficult to be described; and for this reason it has long been the practice in this state to admit even the opinions of non-experts, founded upon their own personal knowledge and in connection with facts stated by them, upon questions "whether a road is or is not in repair, or whether a bridge is sound and safe &c." *Dunham's Appeal from Probate*, 27 Conn., 192, opinion by ELLSWORTH, J., on page 198.

In the case at bar the accident occurred in such a very peculiar manner that we think the opinion of experts was more than ordinarily important. The road in its approach to the bridge would seem not to have been raised much above the adjoining ground at the point where the wheel of the plaintiff's carriage ran off from the shoulder of the road, because the carriage was not thereby overturned although it was going down hill at a rapid rate, and no injury was occasioned until the carriage struck the end of the railing. Under these circumstances the question whether any neglect on the part of the town, or any defect in the road or the rail-

ing, caused the plaintiff's injury, became one of considerable difficulty, in the solving of which the opinion of road-builders of long experience might have proved valuable.

3. The only remaining question is, whether under the declaration in this case the court was warranted in receiving the evidence offered by the plaintiff, for the avowed purpose of enhancing the damages, "that she had for many years been employed in a button shop as a button maker," "and that in this employment she had been accustomed to earn from three hundred to three hundred and fifty dollars a year, and that by reason of this accident she had been unable to perform this service and had sustained the loss of from three hundred to three hundred and fifty dollars yearly since the accident to the day of the trial."

The only allegation in the declaration which can possibly refer to this matter is, "that the plaintiff had been prevented from attending to her ordinary business;" but as the business is not stated, nor any earnings or loss of earnings mentioned, the allegation referred to can only be construed as intended to characterize the injury, and indicate its extent and permanence in a general way, which amounts simply to a claim for general damages, and lays no foundation at all for proof of special damages.

The evidence referred to was not intended simply to show the effect and extent of the injury, but to enhance the damages, by showing the loss of earnings in a special employment, requiring some special skill and training, and to which the plaintiff had devoted many years of her life. These damages therefore were not the necessary result of the acts set out in the declaration, and could not be implied by law; but they were special damages, which, in order to prevent a surprise upon the defendant, must be particularly specified in the declaration, or the plaintiff will not be permitted to give evidence of them at the trial. This doctrine is unquestionable. 2 Greenl. Ev., § 254; 1 Chitty on Plead., (4th ed.,) 328, 346; Sedgwick on Damages, (4th ed.,) 682 to 685; *Bristol Manufacturing Co.* v. *Gridley*, 28 Conn., 201; *Squier* v. *Gould*, 14 Wend., 159; *Baldwin* v. *Western R. R. Co.*, 4 Gray, 333.

In the last case an action had been brought by the plaintiff, who was a school teacher, against a railroad corporation, to recover damages for a personal injury caused by their locomotive engine, and the plaintiff's occupation and means of earning support were held not admissible in evidence to increase the damages, because not specially averred in the declaration.

A new trial is advised.

In this opinion the other judges concurred; except PARDEE, J who having tried the case in the court below, did not sit.