MARY L. CASE, ADMINISTRATRIX, *vs.* DAVID H. CLARK.

Third Judicial District, Bridgeport, April Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

The fact that the plaintiff, in an action for negligence, has himself violated the law is immaterial and irrelevant, unless a causal connection is shown between his illegal act or omission and the subsequent injury for which he seeks to recover.

In the present case the plaintiff's intestate was run over and killed by an automobile while superintending the renewal of a telephone underground service wire at a manhole in a city street. An ordinance of the city required the use of a lighted red lantern at the excavation, but none was in fact used. *Held* that it was for the jury to determine, under proper instructions, whether the absence of the lantern contributed to the accident or not; also whether the decedent, in remaining at the manhole after he saw the approaching automobile, acted as a reasonably prudent person would have acted under similar circumstances.

An assignment of error in the form of a *quære:* whether or not the trial court erred in doing this or that, is improper; error should be directly asserted of each ruling or instruction which the appellant desires to have reviewed.

An omission to charge the jury upon immaterial or undisputed matters is harmless.

Rulings upon questions of evidence of slight importance, or upon inquiries the allowance or disallowance of which is largely within the discretion of the trial court, furnish no ground for a new trial.

The refusal of the trial judge to submit to the jury written interrogatories prepared by one of the parties, is not an improper exercise of his discretion.

In the absence of any complaint or exception at the time, an objectionable remark of counsel in argument to the jury can rarely justify a retrial.

Argued April 13th—decided June 14th, 1910.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the negligence of the defendant in the operation of his automobile, brought to the Superior Court in New Haven County and tried

to the jury before *Gager, J.;* verdict and judgment for the plaintiff for $2,500 damages, and appeal by the defendant. *No error.*

The plaintiff claimed to have established the following facts in the trial court:—

The plaintiff is the administratrix of the estate of her late husband, Frederick T. Case, who, on the 14th of November, 1908, was injured by being run into by defendant's automobile in the roadway at the junction of Temple and Grove streets in New Haven.

At the time he was injured the decedent was an employee of the Southern New England Telephone Company and superintendent of their underground construction work, and on said date had been sent to Temple Street in the city of New Haven to renew a service wire. He had two men with him, his brother Herman and a Mr. Stewart. The deceased had charge of the work, and it was his duty to superintend the stringing of the said service wire.

The three men, having first driven to one telephone manhole on said Temple Street and spliced the wire that ran through the underground duct to another manhole, left Stewart there to handle the coil of wire that was to be pulled through the duct, and the deceased and his brother took a rack, small ladder and hook, and walked to the corner of Temple and Grove streets to the other manhole.

The rack was new, was of wood, made of four stout corner posts, to which two rails were fastened, and was about two and one half feet square, and about two and one half feet high, securely fastened together, and had recently been painted, and on the morning of the accident was of a bright red color.

When the deceased and his brother arrived at the Grove and Temple street manhole, his brother climbed down into the manhole by a ladder, and the rack was

placed over the opening of the manhole on the street; and having come up to do certain work, the deceased's brother again went into the manhole for the purpose of connecting the service wire with the conductor in the manhole, and took with him a large candle in a candlestick, which he had lighted, in order to enable him to properly see the work he was doing. In doing this work the brother, Herman Case, stood in the manhole, facing north, holding the lighted candle in his left hand, and the candle so held was directly under the opening of the manhole in the street and about one foot and a half below it. The manhole was about two feet square at the opening on the surface of the street, about four feet square at the bottom, and was bottle shaped. The red rack was around the street opening of the manhole, its sides being parallel with Temple and Grove streets, respectively. The candle so held by Herman Case shed a good light, and its rays struck clearly on the newly painted rack around the opening of the manhole, so that the reflection of the candle light on the bright red rack could be seen for some considerable distance, at least one hundred feet, and gave the effect and appearance of a red light to any one standing in the highway.

At the southwest corner of Temple and Grove streets was a lighted street lamp, having an incandescent Welsbach burner, which threw a good light over and beyond the region of the manhole, being distant some forty feet therefrom, and furnishing light sufficient to enable one to read at the distance of forty feet; and on the south side of Grove Street, about two hundred and seventeen feet from the manhole, was another electric light which helped materially to light up the locality of the opening of the manhole. There were other lights, both electric and gas, in this vicinity, which furnished some light to the locality in question, as shown and marked on plaintiff's map, the nearest one to the above-

mentioned light being distant four hundred and twenty-five feet from the manhole. These lights made Temple Street a well-lighted thoroughfare.

After Herman Case went into the manhole, his brother remained standing on the street near the red rack. He could reasonably be observed by any one approaching northerly on Temple Street in his direction for a distance of some several hundred feet. Approaching in this manner there was nothing to obstruct any one's view of him and the red rack. As he stood there he gave directions to his brother as to the proper conductor in the manhole to which to fasten the ends of the service wire.

Shortly before the accident several teams passed, and the drivers of them saw the deceased and the red rack, and the light coming out of the manhole, before they reached him, and upon one occasion, about five minutes before the accident, the deceased walked out from the rack and stopped one of the teams by signalling the driver with his hand, and held a conversation with him.

Shortly after five o'clock the defendant's automobile, driven by his servant, approached from the south along Temple Street at a speed of from thirty-five to forty miles an hour. This machine was a thirty horse-power touring-car, with a seating capacity of five, and capable of a speed of forty-five miles an hour. Seated in the automobile were the defendant, his son and his wife, on the rear seat. In one front seat sat the driver, and in the other sat a guest of the defendant. The party were proceeding to the defendant's home. It had just begun to rain, though it had not yet become dark, as there was some light from the sunset, and the defendant's wife was urging the defendant to hurry.

The automobile was equipped with four lamps, two large incandescent lamps in front, called searchlights,

and two small oil lamps on either side of the machine, about at the driver's seat. The large searchlights, which would have illuminated the roadway in front for a distance of some two hundred feet, were not lighted, but the small oil lamps were lighted, but threw no appreciable light on the roadway in front of the machine.

The driver of the car, sitting in the driver's seat, could not see a point on the roadway ahead nearer than twenty-eight feet from the front of the car. As he approached Temple Street he was not looking ahead or keeping any lookout whatever. He did not blow the horn as he approached Temple Street at a speed of from thirty to forty miles an hour. Had he been maintaining any degree of watchfulness of the roadway ahead of him he could have easily seen the plaintiff's intestate standing in the roadway near the red rack. He did not anticipate meeting any person on the street at Grove and Temple streets, and he took no precaution for the safety of any person or persons who might be lawfully upon the highway at that place.

The plaintiff's intestate saw the defendant's automobile coming, and when the automobile was at a distance of about one hundred and fifty feet cried out to the operator of the car to "Hold up; hold up." The driver had abundant opportunity to hold up, stop, or turn out and go around the plaintiff's intestate after the plaintiff's intestate cried out to him to hold up.

The plaintiff's intestate believed he would do either of those things, and with the purpose of saving the occupants of the automobile from danger, or prompted by a desire to save his brother from danger, or else because he was suddenly perplexed and bewildered by the danger of the situation, or had no opportunity to get out of the way, he continued to remain in the roadway. When he cried out to the driver of the car to hold up he was standing near the red rack, and to the east

Case *v.* Clark.

or south of it, and facing the approaching car, and held one hand up in the air as a signal. The plaintiff's intestate believed that the driver saw him, and would turn out to avoid him.

The driver, because of his inattention to his duties, did not hear the cry of the plaintiff's intestate. Said cry was given in a very loud tone of voice, and would have been heard by the driver had he been keeping a reasonable lookout ahead for the time and place. The driver could easily have seen the plaintiff's intestate standing in the roadway, and the red rack and the light shining up from the open manhole and giving the appearance of a red light, in time to have avoided the accident. He did not see the plaintiff's intestate at any time until after he had driven the automobile upon and over him.

The car struck the rack and the plaintiff's intestate, and the driver then stopped the machine as quickly as he could.

The sole and proximate cause of the death of the plaintiff's intestate was the negligence of the defendant's servant in operating his car at such a high and dangerous rate of speed for the time and place, and in failing to have discovered the plaintiff's intestate in time to have avoided injury to him.

The defendant claimed to have proved these facts:—

At the time of the accident the automobile was on the north crosswalk of Grove Street, and was then going at a rate of speed not exceeding twelve miles per hour. The driver immediately applied the brakes, which were in good order, and stopped the automobile. Neither the defendant nor his driver, nor Mr. Hale, who was on the front seat beside the driver, knew that any person had been struck until after the automobile had stopped and some one went back and saw the body of a man lying in the road. At the time of the accident,

which was not earlier than 5.25 p. m., it was misting and very dark. The effect of the shadow thrown by the corner of the frame of the gas lamp was to obstruct the view of a person approaching from the south, and the electric light at the north side of the bridge, beyond the manhole, tended to blind the eyes of a person driving a vehicle approaching from the south, and the inability to see objects in the street was increased by the fact that there was a rise in the street north of the manhole, as well as from the fact that the electric light was hung about nineteen feet above the level of the street. The glasses of the wind-shield were wet with mist and rain, and it was impossible to see dark objects in the street through them, and the lights on the automobile would throw a light only twenty to twenty-five feet ahead.

The driver of the automobile was maintaining a sharp lookout ahead, but did not confine himself to any particular part of the street, and saw no red light, nor anything to indicate that men were working in the street, or that there was an open manhole in the traveled portion of the highway, nor did he hear any person call out to him. At the time of the accident the deceased was kneeling down, looking into the manhole, the opening of which was two feet square.

The ordinances of the city of New Haven, in force at the time of the accident, contained this provision: "Sec. 478. When any excavation is made in any street, the person or persons, by or for whom such excavation is made, shall cause a rail or other sufficient fence to be placed and fixed so as to enclose such excavation, and the dirt, gravel, or other material thrown into the street therefrom; and such fence shall be continued during the whole time such excavation shall be open. And a lighted red lantern shall be fixed to some part of such fence, or in some other proper manner over or near such excavation, and the dirt, gravel, or other material

taken from the same, and so kept from the beginning of the twilight of the evening through the whole of the night, and shall be continued every evening and night during all the time such excavation shall be open, or in a state of repair."

The driver was influenced to some extent by the absence of a red light to believe that the place was free from obstructions.

During the argument to the jury the plaintiff's counsel used the following expressions, and with some repetition: "My God! how this engine of destruction ground out his life! This engine of destruction took away this life and sent him down to his death. Poor Case: he had just got his pay for the week, and his little girl came along from the dancing-school, and was on her way to her home, when this engine of destruction came along and crushed out his life. The lamp of his life went out forever, and Mr. Clark can afford to pay his widow and children." No objection was taken at the time to these statements, and the court made no special reference to them in its charge.

The defendant made some seventeen requests to charge, among which were these: That at New Haven, on the day in question, the sun set at 4.23 p. m., that is, thirty-seven minutes of five o'clock; that twilight begins at the moment the sun has set; that failure on the part of the deceased to observe the provisions of the ordinance above quoted—provided his failure in any way contributed to the accident—was fatal to the plaintiff's recovery, and the verdict must be for the defendant in that event.

The defendant requested the court to submit to the jury eight prepared interrogatories, to be answered by the jury in rendering their verdict; which, upon plaintiff's objection, the court refused to do.

The defendant requested the court to direct a ver-

dict for the defendant upon the ground that it appeared that the plaintiff's intestate was guilty of contributory negligence. This request was refused.

The jury returned a verdict for the plaintiff for $2,500, which the court refused to set aside, upon the defendant's motion, as against the evidence.

*Seymour C. Loomis*, for the appellant (defendant).

*Walter J. Walsh*, for the appellee (plaintiff).

HALL, C. J. The defendant appeals from the refusal of the trial court to set the verdict aside as against the evidence, and also appeals from the judgment for alleged errors of the trial court in declining to charge as requested, in the charge as given, and in certain rulings upon questions of evidence.

The defendant has brought up the entire evidence, consisting of some three hundred and fifty printed pages, to support his claim that the court should have set aside the verdict as against the evidence. Upon an examination of it we are satisfied that there was sufficient evidence to justify the jury in finding that the defendant was negligent, as alleged in the complaint, in running his automobile at too high a rate of speed at the place of the accident, and in not keeping a vigilant lookout ahead, when there was sufficient light and opportunity to enable him to see the deceased and avoid the accident. It would be unprofitable to repeat here the testimony which, in our opinion, was ample to support a verdict that the defendant was guilty of negligence as alleged in the complaint.

Apparently the claim of the defendant, that the verdict should have been set aside, is based mainly upon his contention that the record shows that the negligence of the deceased essentially contributed to cause the

accident; and this contention seems to be based upon the claims that the record clearly shows: first, that the deceased violated the city ordinance above cited, in failing to fix, after the beginning of twilight, a lighted red lantern to the red rack or fence which was placed over the opening of the manhole; and second, that it clearly appears that the deceased saw the defendant driving toward him at a rapid rate of speed, apparently unmindful of the presence of the deceased or the location of the rack in the roadway, and made no effort whatever to avoid the approaching automobile, although he had sufficient time to do so after he first saw it.

We think the evidence does clearly show both of these facts, but we do not think these facts necessarily debar the plaintiff from recovering in this action. The violation of the ordinance will not defeat the action unless such violation contributed to cause the injury. If the jury found that no occupant of the automobile was looking ahead as the automobile approached the open manhole, or found that at the time and place of the accident there was sufficient light to enable the defendant to clearly see the obstructing red rack and the deceased standing in the roadway, they may well have found that the absence of a lighted red lantern did not contribute to cause the accident. If the actual situation in the street was just as obvious without a lighted red lantern on the rack as it would have been with one, manifestly the violation of the ordinance had no connection with the accident.

Regarding the effect of the violation of the ordinance, the court said to the jury, among other things, that the burden rested upon the plaintiff to prove that the plaintiff's intestate "was free from negligence and from illegal conduct which contributed to produce the accident"; that "the defendant and his driver . . . had a

Case *v*. Clark.

right to expect that others would comply with the ordinance requiring a lighted red lantern in case of an opening in the street"; that the law was "perfectly clear and settled that if the plaintiff's intestate was violating this ordinance at the time of the accident, such unlawful act, if it directly contributed to the injury, was a conclusive bar to recovery in this action," but that "if there was abundant light about the scene of this accident, and the servant of the defendant could, by the exercise of reasonable care, have seen the plaintiff in the highway, so that the failure to display a red lantern was not related to, or did not in fact aid in producing the injury, then the violation of the ordinance by failure to display a red lantern, if such was the fact, would not excuse the defendant from being guilty of negligence."

Under these instructions the jury, in rendering a verdict for the plaintiff, must have found that the absence of a lighted red lantern upon the rack did not contribute to cause the accident. There was sufficient evidence before them to support that conclusion.

Regarding the duty of the deceased to leave the roadway and avoid the automobile when he saw it approaching, the court instructed the jury that "if the deceased saw the automobile coming when the automobile was a hundred and fifty feet away from him, as was testified to by one of the plaintiff's witnesses, and shouted to it to keep out of the way, it was his duty to have removed himself to a safe position, where he would not be struck by the automobile, if he could have done so by the exercise of reasonable care after the danger was or should have been apparent to him. The deceased was bound to exercise reasonable care to protect himself from injury, and if he knew the automobile was coming, it was his duty to exercise reasonable care to get out of the way of it; that is, the moment that he

saw, or as a reasonable man ought to have apprehended, danger from it."

These instructions were certainly sufficiently favorable to the defendant. There is no rigid rule of law which made it negligence *per se* for the deceased to remain at the rack after he saw the approaching automobile, even though he was aware that the occupants of the automobile had not observed him or the obstructing rack at the manhole, and was aware that he might be injured by remaining where he was. The law only required him to act as a reasonably prudent person would have acted under similar circumstances. After seeing the approaching automobile he had but a short time to decide whether he should abandon his position, and thus secure his own safety, or whether, having perhaps in mind the danger in which his brother and the occupants of the automobile might be placed by such a course, he should remain at his post and call out to, or signal, the automobile driver, in case he continued to fail to notice the obstruction in the roadway. He may have known that the occupants of the automobile could see that the roadway was impassable at this point, as clearly as they could had a lighted red lantern been displayed. He may reasonably have supposed they would observe the obstruction before they reached it, as others had done, or that if they failed to do so, that they would heed his call or signal and turn aside as others had. It was a question of fact for the jury, fairly submitted to them, whether the conduct of the deceased, in the situation in which he was placed, was reasonable. The jury must have decided that it was. Such decision was not against the evidence. The court did not err in denying the motion to set aside the verdict.

The so-called reasons of appeal from the judgment are not properly assigned. They should state the claimed

errors of the trial court. General Statutes, § 798. To state, as a reason of appeal, "whether or not the court erred" in stated rulings or decisions, as is done throughout this appeal, is not to state an error of the trial court. But disregarding these defects, since no objection is made to them, we think the appeal from the judgment presents no sufficient grounds for granting a new trial.

The charge to the jury substantially complied with most of the defendant's requests to charge. If it can be said that the court omitted to instruct the jury as to the hour of sunset, or the time of the commencement of twilight, on the day in question, such omission was immaterial. There was no dispute but that the accident occurred after five o'clock in the afternoon, and some three-quarters of an hour after sunset, and the court practically told the jury that there was no question but that it was twilight any time after five o'clock.

We deem it unnecessary to repeat or discuss here the numerous parts of the charge complained of in the appeal. We find no material error in the instructions given.

The rulings upon questions of evidence complained of, furnish no ground for a new trial. Generally they were upon matters of slight importance, or upon questions the permitting or forbidding of which was largely within the discretion of the trial court.

The refusal of the trial judge to submit to the jury the written interrogatories propounded by the defendant was not an improper exercise of his discretion. *Freedman* v. *New York, N. H. & H. R. Co.*, 81 Conn. 601, 612, 71 Atl. 901.

The court might properly have reproved plaintiff's counsel for using in his argument the language set forth above in the statement of facts, or might properly have called the attention of the jury to the impropriety

of these remarks. In the absence of any complaint or objection by defendant's counsel at the time they were made, we think a new trial ought not to be granted on account of such objectionable language of the plaintiff's counsel.

The request for a correction of the finding is denied. There is no error.

In this opinion the other judges concurred.