## DOROTHEA ANTEL vs. SYLVESTER Z. POLI.

Third Judicial District, New Haven, June Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

Assignments of error should assert error directly, and not suggest it in the form of a *quære:* "whether the court erred" in ruling this and that.

While not bound to consider errors unless specifically stated (§ 5837), this court may, in its discretion, pass on errors defectively assigned, if ultimate justice seems to require it.

The control of proceedings in the court-room is necessarily within the discretion of the trial court, whose orders are not reviewable unless its discretion be abused.

Parties have a right to be present during the entire progress of the trial, so long as they do not by their presence and utterances disturb the orderly business of the court.

The plaintiff, suing for damages for personal injuries, was brought into court on a stretcher amid continuous exclamations of pain by her, while the court was explaining the case to one or more jurors in the jury box, causing a suspension of its remarks. The defendant moved to dismiss the entire panel, which the court refused, but prevented a recurrence of such spectacular entry. *Held* that while the theatrical manner of the plaintiff's entrance should have been avoided, and counsel were at fault in permitting it, the court exercised its discretion wisely in denying the motion.

The plaintiff claimed that her injuries resulted from the defendant's negligence in permitting a defective threshold of a doorway to exist, upon a part of which she stepped and slipped, causing her to fall down a stairway. She was permitted to testify on direct examination, without objection, that she knew she tripped on something, because she was told later that it was a piece of concrete. At the close of the evidence the defendant moved to strike out this testimony, which the court denied. *Held* that in view of the time when the motion was made and of the relative unimportance of the matter, there was no error in the court's ruling.

There is no presumption of law that an alleged negligent condition once established by actual proof, continues to exist; and if such continuance is relied upon, it must be proved like any other fact.

The plaintiff was permitted to offer evidence of the condition of the doorway some five months prior to her injury, upon the promise of her counsel—which was not fulfilled—to show that such condition continued to the time of the accident. This evidence was not stricken out, and the court in its charge commented upon its

Antel *v.* Poli.

bearing as showing the defendant's negligence. *Held* that this constituted reversible error.

Ordinarily trial courts should require the evidence of a negligent condition to begin with the date of the condition in issue, and then trace it back consecutively, rather than to begin with the earlier period and follow it down to the date when it comes in issue.

The practice of insuring against liability for accidents of this nature is now so general, that jurors may be expected to know of it and not to be prejudiced by an allusion to that subject. Accordingly, evidence of statements attributed to the defendant, to the effect that he had visited the scene of the accident with his insurance men, does not render it incumbent upon the trial court to declare a mistrial, especially if the jury are cautioned to disregard the reference to insurance.

Upon an issue of negligence as to the condition of certain premises, evidence of safe user by many persons is admissible, but only when the inquiry is limited to a use and test substantially similar to that of the injured person.

Evidence was admitted that the plaintiff's engagement of marriage was broken off as a result of her injuries. *Held* that such evidence was entirely immaterial and showed no proper element of damage to be awarded her.

A medical expert who had answered a hypothetical question on direct examination, admitted on cross-examination that in such answer he had in mind facts learned by him from a personal examination of the plaintiff. *Held* that the defendant was not entitled to have the entire testimony on the hypothetical question stricken out, without showing that the witness' answer was in part based upon the facts found by his personal examination; and that had it so appeared, the question could then have been reframed to include the additional facts so found by him.

The court cautioned the jury as to the bearing and effect of the testimony of a medical expert for the defendant, attributing the plaintiff's physical condition to an earlier fall claimed by the defendant to have occurred, but denied by the plaintiff. *Held* that in this there was no error.

Argued June 7th—decided December 13th, 1923.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Brown, J.*; verdict and judgment for the plaintiff for $25,000, and appeal by the defendant. *Error and new trial ordered.*

The plaintiff offered evidence to prove and claimed
to have proved these facts: The plaintiff was an act-
ress, and on December 29th, 1919, was employed by a
theatrical company, playing as leading lady in defend-
ant's theater in Hartford in a vaudeville performance
called "The Night Boat," on December 29th, 30th, and
31st, 1919. The defendant on these dates was in the
control, management and operation of the theater in
which plaintiff was acting. The plaintiff's part re-
quired her to make changes of costume, which obliged
her to go to a dressing-room on a floor above the stage,
connected with the stage by an iron stairway which
terminated at the top of an iron platform, directly in
front of a door entering the dressing-room, and three
or four feet long by thirty inches wide. The iron stair-
way and platform were worn smooth and slippery by
the attrition of thousands of people passing over them
every year. The threshold of the door was elevated
five inches above the platform, its top made of cement
one to one and one half inches thick, laid over an under
floor made of cement, sand and stone, which had been
laid and allowed to harden, and the cement floor later
laid over it. Through the doorway trunks had been
dragged, and the threshold had become worn, cracked
and broken. As far back as July, 1919, the threshold
had become cracked and broken so that there was a
loose piece or two near the edge which was liable to
slip and tip down upon the platform, and had caused
two actresses to slip and fall on the platform. Nothing
had been done to repair the same until after the accident
to the plaintiff. On December 29th, 1919, the threshold
was in a broken and dangerous condition by reason
of a piece of concrete twelve inches in length by four
or five inches in breadth being broken away from the
threshold and its front edge tipped down upon the
platform. The plaintiff had used this dressing-room

on December 29th, but had not noticed the condition of the threshold. At the evening performance she used this dressing-room, and in passing from the room to the platform she stepped upon a broken piece of the threshold which slipped from under her foot and threw her feet forward across the platform and down the stairway, causing her the injuries for which she sues.

The defendant offered evidence to prove and claimed to have proved the following: That on December 26th, 1919, the plaintiff, in leaving a restaurant on the second floor of a building in Springfield, slipped and fell down a stairway composed of fifteen or sixteen steps. On rising after her fall the plaintiff complained of pain in her back, and on the following day of having difficulty in walking and still had pains in her back, although she continued her Springfield and Hartford engagements up to the time of her accident in Hartford. In changing her costume at the evening performance on December 29th, plaintiff ran up the stairway of eight steps to the dressing-room, and upon the manager of plaintiff's vaudeville act calling "Hurry, Miss Antel," the plaintiff ran from the dressing-room and having passed down two or three steps of the stairway fell on her back and in that position descended the iron stairway. A piece of the heel of plaintiff's shoe worn at the time of her fall was picked up on the stage floor some distance from the foot of the stairs shortly after the plaintiff's fall. The plaintiff's fall in Springfield produced an injury to her back and some of her muscles, so that they could not respond quickly when called upon, and the plaintiff's hurry and the high-heeled shoes worn by her, were the causes of her fall, and not the alleged negligence of the defendant. On December 27th, 1919, a piece of the cement floor overhanging the platform of the stairway was broken out, at a point four inches from the left jamb of the door leading to

Antel *v.* Poli.

the dressing-room, and extending four inches in length by four and one half inches in depth. The plaintiff, in passing through the door, which was thirty inches wide, did not come in contact with the break in the cement, and it did not contribute to her fall. Had the break in the cement produced the plaintiff's fall she would have landed with her face downward, and not upward and on her back as plaintiff claims. The plaintiff's fall was due to her own negligence: (a) In hurrying down the stairway; (b) in wearing high-heeled shoes; (c) in failing to protect herself by the steel railing permanently attached to the stairway, at the time she attempted to descend; (d) in proceeding, as she did, after her fall at Springfield had resulted in the impaired physical condition she was then in.

*Benjamin Slade* and *Carl Foster*, for the appellant (defendant).

*Charles S. Hamilton*, for the appellee (plaintiff).

WHEELER, C. J. The action is one to recover damages for the alleged negligence of the defendant. The plaintiff asks us to disregard the appeal for the reason that the assignments of error do not comply with General Statutes, § 5837. The assignments of error are all of the same form, for example: "Whether the trial court erred in admitting the testimony," etc. The assignments are not in proper form. On at least four occasions we have disapproved of assignments beginning, "Whether or not the court erred," or "Whether the court erred." *McCaskey Register Co.* v. *Keena*, 81 Conn. 656, 657, 71 Atl. 898; *Case* v. *Clark*, 83 Conn. 183, 195, 76 Atl. 518; *Johnson* v. *Cooke*, 85 Conn. 679, 682, 84 Atl. 97; *Hoyt* v. *Stuart*, 90 Conn. 41, 96 Atl. 166. The Practice Book, p. 313, gives

adequate forms, by following which all counsel should be able to frame proper assignments on appeal. Reference to our records will disclose that not infrequently counsel do not draft the assignments of error in accordance with the forms given, and with the decisions of this court upon the subject of the form in which appeals should be drafted. The statute, § 5837, provides: "But the court shall not be bound to consider any errors on an appeal, unless they are specifically stated in the reasons of appeal." We have interpreted this statute in the cases above cited, to give this court authority within its discretion to disregard any assignment of error defectively or improperly stated. In this case we exercise our discretion to consider the assignments of error, because the case is an important one, and unless we consider and pass upon these assignments of error and determine this appeal, ultimate justice may not be done to this defendant.

Error one is predicated upon the refusal of the court to dismiss the entire panel because of the bringing of the plaintiff into the court-room on a stretcher amid continuous exclamations of pain by her, while the court was explaining the case to one or more jurors who had taken their seats in the jury box, causing the court to suspend its remarks. The plaintiff had a right as a party to be present during the entire progress of the trial so long as she did not by her presence and utterance disturb the orderly business of the court. The theatrical manner of the plaintiff's entrance by its interruption of the court proceeding ought to have been avoided, and counsel were at fault in permitting it. Thereafter the court prevented its recurrence. The control of the order of the court-room is necessarily within the discretion of the trial court, and unless abused cannot be reviewed. In denying this motion the court exercised its discretion wisely.

Assignment of error 32A. The negligence alleged and claimed to have been the proximate cause of plaintiff's injuries, was in permitting a defective threshold of a doorway to exist upon a part of which the plaintiff stepped and slipped causing her to fall down a stairway. The plaintiff testified that when she was about to come down the stairway she stepped on the sill and a piece of broken concrete slipped from under her foot and it threw her down the steps. She was then inquired of: "(Q) You say that you tripped on something? How do you know that you did? " and replied, "Why, I was told later that it was a piece of concrete." The plaintiff offered other evidence to prove that a piece of concrete threshold had broken and slipped when stepped on. No objection was made to the statement that the witness had been told that it was a piece of concrete, and no cross-examination thereon was made, and no motion made to strike out the hearsay evidence until the conclusion of the case and after the denial of defendant's motion to direct a verdict. The defendant had offered evidence to prove that there had been, on December 27th, a piece of the threshold broken which had been removed on that day and replaced in cement on December 29th. The court did not commit error in denying the motion to strike out this evidence. The only fact that could be claimed to be hearsay was that the piece of threshold the plaintiff slipped on was a broken piece of concrete. The defendant permitted this evidence to stand throughout the remainder of the trial and then made his motion. It came too late. The statement by the trial court of the basis of its ruling, "that in view of the time when the motion was made, taken in conjunction with the facts of the plaintiff's condition and that she had been removed upon a stretcher from the court-house before the motion was made, and that if granted the plaintiff's counsel might fairly feel

obliged to ask to have her recalled to testify further upon the point, with the consequent physical hardship upon the plaintiff and further substantial delay in the trial, which had already consumed four court weeks,"—shows plainly that it exercised a wise discretion in denying the motion. It is evident from the course of the trial that counsel at no time regarded this matter as of any practical consequence, and that position was not only sound but tactically wise in the protection of the defendant's interest. In its charge the court referred to the matter in such way as to guide the jury properly in their consideration of this portion of the plaintiff's testimony.

Errors 4, 5, 6, 7 and 67. To prove the negligence of the defendant as claimed, the plaintiff offered the testimony of Mrs. Hughes as to the location of the stairway, and then inquired as to the lights in the rear of the stage on July 27th, 1919, about five months prior to the injury for which plaintiff sues. Upon objection by defendant, plaintiff's counsel stated: "We shall prove the same condition of things existed up to the time of the accident." And the court inquired of the counsel: "Do you propose to follow this up with evidence that the same condition obtained at the time of the accident?" and upon counsel replying, "Yes, sir, keeping right up to the time of the accident," the court ruled: "Subject to that condition, I will allow the testimony," to which ruling defendant's counsel excepted. Subsequently the same witness testified as to the condition of this concrete threshold and as to her falling thereon and as to her having in mediately reported this to defendant's representative in charge of the stage. Immediately after Mrs. Hughes had testified, Miss Thebaud was called as a witness and inquired of as to the condition of the threshold on this same date, July 27th, 1919. This was objected to by defendant's counsel

Antel *v.* Poli.

as immaterial and irrelevant. Plaintiff's counsel urged that as Mrs. Hughes' testimony had come in without objection, it was too late to object to evidence of another witness as to the same condition. The court inquired of plaintiff's counsel: "Do I understand this evidence is offered as was the evidence of Mrs. Hughes subject to the same condition, that you are going to show that the same condition persisted." Counsel replied: "By other witnesses at other times, we would show it was broken a long time." The court allowed the testimony upon the statement of counsel that it is testimony of a condition in effect in July the same as at the time of the accident. To this ruling defendant's counsel excepted.

The record is entirely clear that both the testimony of Mrs. Hughes and Miss Thebaud as to the condition of the threshold and their experiences thereon on July 27th, 1919, came in subject to the promise of counsel for the plaintiff to show that its then condition persisted to the date of the accident, and that the evidence was admitted by the court subject to the fulfillment by the counsel of his promise. Without such connection the evidence was clearly inadmissible. The continuance of the existence of an alleged negligent condition must be established by actual proof, since there is no presumption of law that this condition, once established, continues. *Collins* v. *Dorchester*, 60 Mass. (6 Cush.) 396; *Hubbard* v. *Androscoggin & K. R. Co.*, 39 Me. 506. The plaintiff's counsel made no effort, so far as the record shows, to fulfil his promise or to comply with the condition upon which the court admitted the evidence. Subsequently, at the conclusion of the plaintiff's case, the defendant moved that the testimony of Mrs. Hughes and Miss Thebaud as to the condition of the threshold on July 27th, 1919, be stricken out, and the court denied the motion and defendant

excepted. The motion should have been granted. The evidence was admitted conditionally and the condition had not been fulfilled. Without its fulfillment the evidence was inadmissible. The condition of the threshold on July 27th did not by itself tend to prove that its condition had remained the same down to the date of the accident, December 29th following. This evidence cannot be held to have had no material effect in the case, and hence the ruling admitting it cannot be held to have been harmless. It was admitted as tending to prove the very act of negligence upon which the plaintiff's case rested, and to charge the defendant with knowledge of the existence of this defective threshold for at least five months prior to this accident. Not only were these witnesses permitted to testify as to the condition of the threshold, but as to their experience in falling thereon at the same time.

The court in its charge specifically reviewed the testimony of Mrs. Hughes and Miss Thebaud, and presented the claims of the plaintiff thereon that upon this testimony and that of the witness Greaney and the plaintiff, they established the existence of this defective condition of the threshold so long continued as to charge the defendant with constructive notice thereof, and charged that if the jury found that this constituted what a reasonably careful man would not do, the jury might find the defendant negligent as charged. The portions of the charge covering this subject-matter are found in defendant's assignment of errors 113–117, inclusive. A conclusion that the admission of this evidence did not materially affect the verdict, would compel a finding that the jury ignored a very substantial portion of the charge upon a subject covered with fullness and clarity. The admission of this evidence must be held to be reversible error. Counsel should know whether the evidence he purposes

offering will justify his promise to prove a condition to continue over a period of time, and in this case the promise seems to have been made either in carelessness or rashness.

The situation disclosed by this record leads us to suggest that similar situations will be avoided if trial courts adopt a rule refusing to admit testimony of a condition existing at a date substantially earlier than the date of the condition in issue, until proof has been made of the condition existing in the intervening period, and require the evidence of such continued condition to begin with the date of the condition in issue, and then trace the condition back consecutively, instead of beginning with the remote period and tracing it down to the date of the condition in issue.

Error 65. Mrs. Hughes testified, against defendant's objection, that on July 19th, 1919, she observed trunks being taken in and out of this dressing-room, and that she had two heavy trunks which were hauled over the threshold and not lifted over. This evidence was inadmissible to prove that the broken concrete of the threshold was caused by the hauling over it of trunks on July 19th. The evidence was too remote and could not have been received unless there was evidence of such continued use, or that this use caused the threshold to become broken and to so remain to the time of the accident to the plaintiff.

Error 15. The witness Naylor testified that the defendant had told him in January, 1922, that he knew that the sill was damaged or in bad repair, and had visited the scene of the accident with his insurance men and Mr. Clancy, the manager of the theater. Thereupon the defendant moved that the evidence be stricken out and the court declare a mistrial because the witness had testified to what the defendant had said as to two insurance men being with him along

with the manager of the theater when he had examined the scene of the accident. The defendant's statement was a single connected statement, and we do not think it was incumbent upon the witness to delete the part which referred to the two insurance men. The record does not indicate any prejudicial effect from this reference to the insurance men, and in view of the court's caution to the jury in the charge not to regard any mention of an insurance company as being material to the issues in the case, we could not find such prejudice without holding that the jury disregarded the caution and thus failed in their duty. Insurance against loss or damage from accident or negligent conduct is so universal, that jurors as well as courts must be assumed to be cognizant of this, and hence evidence of that fact will not be as likely to create prejudice as it might have done before this method of business became so general.

Errors 37, 38, 39. The defendant's witness Minor testified in chief as to the condition of the stairway and dressing-room from July, 1919, to the date of the accident, and of his frequent daily passing over the stairway in question. To the question: "(Q) Can you express an opinion about the number of people that went in and out of the dressing-room between July 20, 1919, and December 29, 1919?", the plaintiff objected, and it was excluded, and this ruling forms one of the errors assigned. In *Calkins* v. *Hartford,* 33 Conn. 59, a similar question was ruled on, and we said: "One important question in this case was, whether, if the ice was there, it was or was not in a slippery and dangerous condition. If the plaintiff had offered evidence to show that a number of persons had actually slipped upon it, it would have been strong proof that it was in a slippery and dangerous condition. . . . Why then should not proof that a

number of persons passed over it and did not slip, be admissible as tending to show that it was not in a slippery condition?" In *Taylor* v. *Monroe*, 43 Conn. 36, 42, we explained this ruling as follows: "This evidence was admitted on the ground that the defect was of such a character as that the attention of the witnesses must have been called to it if it existed, and that their experience of its effect must have been, or would naturally be, substantially the same as that of the plaintiff." The question asked in *Taylor* v. *Monroe, supra*, was: "Has any accident or injury resulted to any person from the want of a railing on the east side of the north approach to the bridge, or on account of the insufficiency of the railing as it has existed at the bridge and causeway?" We said of this: "The object of the proposed evidence was to show that actual use had tested the way and had shown it to be safe. If the evidence had met the precise point aimed at, it would have been admissible; but to reach that object the use and experience of others relied upon must have been of a nature to have tested the alleged defect; or, in other words, it must have been a use and test substantially similar to that of the plaintiff. . . . No similar experience or trial of the alleged defect was attempted to be shown; but the evidence relied upon merely tended to show that, in the ordinary use of the highway for many years, no accident had occurred at that place. . . . The court therefore properly rejected the evidence." Upon a similar offer in *Lutton* v. *Vernon*, 62 Conn. 1, 23 Atl. 1020, 27 *id*. 529, we said: "So far as we can see from the record, the evidence was, in substance, that no accident had happened at the point in question for the want of a railing or barrier. Presumably the object of the evidence was to show that actual use had tested the way for twenty years, and shown it to be safe. . . .

Within the principle laid down in the case here cited [*Taylor* v. *Monroe, supra*], the evidence in question is clearly inadmissible." There is a clear line of cleavage as to this principle among the courts of the States, but whether the majority approve of it or not does not now concern us, since our court has definitely and finally adopted the principle as stated, explained and relied upon in the cases cited above. Turning to the question asked the witness Minor, we see that no attempt was made in the question, nor was there in what preceded it, to limit the inquiry to a "use and test substantially similar to that of the plaintiff." For that reason the ruling must be held to be in accordance with our law.

Error 20. The witness Naylor testified as to the physical condition of the plaintiff prior to and after the accident. Upon cross-examination he was inquired of as to whether he was not at one time engaged to the plaintiff and answered in the affirmative. On redirect examination the witness testified that the engagement was broken off about a month after she was taken to the hospital. He was then permitted to testify, over defendant's objection, that the occasion of the engagement being broken off was that the plaintiff said: "Walter, I can't marry you if I am going to be a cripple. It would not be fair to you." The admission of the cause of the breaking off of the engagement was quite immaterial to the issues involved in the case and was hearsay. The court should have sustained the objection, and not having done this, have granted defendant's motion to strike out the answer of the witness after it had been given. The evidence was liable to have been considered as one of the elements of damage plaintiff had suffered, and hence to have materially affected the award.

Errors 22–28. One of the questions asked of Dr.

Arnold was erroneously excluded. The doctor testified in chief as to the condition of plaintiff's injured limb and, among other things, that the skin of the foot was fair in color and there was no wasting of the left leg and that it was sufficiently nourished. Upon cross-examination he was inquired of: "If the leg and foot were subjected to locomotion and those in attendance received co-operation of the patient she would be able to move the leg about, wouldn't she?" The question was objected to and excluded. No reason was given for the objection or the ruling, and we are unable to understand why it was not legitimate cross-examination. The character of the case and of the expert evidence produced, and the record of the case, would not permit us to hold that this was a reversible error. Upon the cross-examination of Dr. Arnold, he was asked if, in answering the hypothetical question, he had in mind facts learned by him from an examination of the plaintiff, and he said that he had. Thereupon defendant moved that his entire testimony on the hypothetical question be stricken out. The court denied the motion and we think correctly. Counsel did not go far enough in his inquiry by ascertaining whether the doctor's answer to the hypothetical question had been based upon the facts therein recited together with other facts found by his personal examination. Had this appeared the court could have ascertained what those facts were, and if the testimony as given could not have been segregated from these facts, the court could then have stricken out the answer to the hypothetical question and had submitted to the expert this question plus these additional facts and allowed the entire evidence in relation thereto to stand. The other rulings in relation to the doctor's testimony were correct.

Error 44A. Based upon the hypothetical question

which recited that the plaintiff had fallen in Spring-field on December 27th, on her back, and on the 29th in Hartford, upon her back, and that she had certain physical conditions, Dr. Diefendorf testified for the defendant that in his opinion the plaintiff's condition was attributable to the disease known as "traumatic neurosis," which is a condition of the mind. He was then inquired of: "What is your opinion in regard to the effect of the fall in Springfield upon the subject's present condition?" and replied, over plaintiff's objection, that it was the proximate cause. Subsequently the court reversed its ruling and excluded the question. We think the ruling was erroneous, but we do not consider the opinion of sufficient consequence in the case to make its exclusion reversible error. There were two falls described in the hypothetical question, and there is nothing in that question which should enable an expert to say definitely that the fall in Springfield caused the claimed traumatic neurosis. The expert might have concluded that the fall in Springfield might have been a possible cause of the traumatic condition, and therefore the question as to the time that may elapse between such a fall and the appearance of the traumatic neurosis was admissible. So, also, was the question as to the effect upon the plaintiff's present condition of the wearing of the steel brace, since the defendant's claim was that the treatment of the plaintiff should be directed to her mind rather than the condition of her body.

Assignment of error 129, raises the question of the legal correctness and propriety of the court's charge upon expert testimony and as applied to the testimony of this witness in definitely attributing the present condition of the plaintiff to the fall in Springfield. The portion of the charge criticised as is follows: "There are certain results from certain acts and con-

ditions that the jury, in bringing to bear their experience in life and practical common sense, can come to their conclusions without the aid of the opinion of a person who claims to be an expert, or, in fact, may come to a conclusion directly opposite to such opinion; and, of course, in weighing this expert testimony you should bear in mind the source from which it comes and consider what influence and bias, if any, may operate on the mind of the witness in giving his testimony; whether he is testifying rather to the things which he hopes to be true than those which are made from deductions from the facts as put to him; and also, if an expert witness testifies on an assumption that certain things are true which you shall find from the evidence are not true, you might find his expert opinion to be of no value, because his conclusions being founded wholly or partially on false premises, his conclusions are not true. As, for instance, where one of the doctors called by the defense testified that the reason for the fall of the plaintiff, in his opinion, at the Palace Theatre on the twenty-ninth of December, 1919, was the result of the loss of control of her muscles by reason of her having slipped on a flight of stairs in Springfield on the twenty-sixth of December, should you find from the evidence that no such fall at Springfield took place, or you conclude from the evidence that the expert's knowledge of such fall, if any occurred, as stated, was so very slight that his opinion could not fairly and logically be based on it, you might properly reject any such opinion entirely."

Unquestionably this indicated that the judge did not attach value to this opinion. We find no error in this charge. On the contrary, we approve of it, and are of the opinion that this record justified it.

We have duly considered all of the other assignments of error and find them either not well taken, or of too

immaterial a character upon which to predicate reversible error.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.