ETHEL ANTHONY *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

While not an insurer of the safety of its passengers, a street-railway company is bound to exercise the highest degree of care and skill which may reasonably be expected of intelligent and prudent persons versed in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended.
Such a degree of care involves or includes the duty of having the car

Anthony *v.* Connecticut Co.

under control at intersecting streets, whether that duty be prescribed by city ordinance or not.

The violation of a city ordinance by a street-railway company is of no consequence if it could have had no influence in causing the accident; and under such circumstances the alleged violation may properly be withdrawn from the consideration of the jury.

One cannot recover for negligence based upon the violation of a statute or ordinance which is not intended for his protection.

The plaintiff claimed that as a result of the accident she had neurasthenia, while the defendant insisted that, if so, it was due to her use of liquor. The plaintiff denied that she was intoxicated and had been arrested for that cause about two months before the accident, but the defendant offered evidence in support of these contentions, and that the use of alcohol was a common cause of neurasthenia. *Held* that it was for the jury to say what effect this evidence might have upon the credibility of the plaintiff as a witness, as well as its bearing upon the question of damages.

Single, detached sentences of a charge are not to be selected for criticism, when the charge, read as a whole, is correct and adequate for the guidance of the jury.

Argued October 27th—decided December 21st, 1914.

ACTION to recover damages for personal injuries resulting from a collision between a runaway team and a trolley-car in which the plaintiff was riding as a passenger, which was alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

*Charles S. Hamilton* and *Ezra C. Terry,* for the appellant (plaintiff).

*Harrison T. Sheldon,* for the appellee (defendant).

RORABACK, J. The complaint stated that the cause of the collision of the runaway team with the trolley-car was the negligence of the defendant, in that its agents and servants saw, or by the exercise of reasonable care might have seen, the approach of the runaway

team down Columbus Avenue, coming directly toward Meadow Street and apparently about to cross the same into Union Avenue, and while thus in danger of colliding with the runaway team the defendant negligently continued up Meadow Street, and propelled its car in such a way as to come directly in front of and in danger of being hit by the runaway team, and neglected to slow down the car and have it under control, or to stop it in sufficient time to prevent a collision with the runaway team; and in that the defendant, when the danger was apparent to the passengers, failed to stop the car and allow the passengers to alight therefrom, and the passengers were unable, on account of the speed of the car and continued motion of the same, up Meadow Street, to alight therefrom and protect themselves.

Counsel for the plaintiff submitted various requests to charge, and, among others, the following: "When the plaintiff became a passenger upon the cars of the defendant and the defendant accepted her as such passenger and received her fare therefor, the defendant assumed the obligation to exercise the highest practicable degree of human skill to carry her in safety, and undertook absolutely to protect her against any injury or wilful misconduct of its servants in the performance of its contract, and this obligation rested upon the defendant until the final termination of the passage for which she had paid. . . . Hence, if the jury find that the defendant failed in any of these respects to carry the plaintiff safely and protect her from danger, when it might have done so by the highest practicable degree of human skill and care, the defendant is liable to the plaintiff in damages. . . . The obligation rested upon the defendant's agent and servant to use the highest practicable degree of skill and diligence to protect passengers and to watch out for the approach of teams, runaway or otherwise, that might

collide with the car, and the defendant's servant was bound to anticipate that there might be teams coming through Columbus Avenue into Union Avenue and hence crossing Meadow Street, and it was his duty . . . to keep a vigilant lookout for such teams and see that passengers were not endangered."

The instructions given to the jury upon this point by the presiding judge were: "A common carrier of passengers by street-car is required to exercise the highest degree of care and skill which may reasonably be expected of intelligent and prudent persons engaged in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended. A carrier is not an insurer of the safety of its passengers and is not bound absolutely and at all events to carry them safely and without injury. The passengers take the risk of their own negligence (there is none claimed in this case), and take the risk of dangers which could not be averted by the carrier by the exercise of the degree of care which the law requires; and on that point I will repeat what I said a moment ago, the care is the highest degree of care and skill which may reasonably be expected of an intelligent and prudent person engaged in that business, in view of the instrumentalities employed and the dangers naturally to be apprehended."

This statement as to the degree of care to be exercised by the defendant was repeatedly made by the court during its charge.

These instructions were a correct statement of the law as defined by this court. In *Ferguson* v. *Connecticut Co.*, 87 Conn. 652, 654, 89 Atl. 267, it is said: "The carrier must provide safe, sufficient and suitable vehicles for transportation, and must provide such servants for the management of the same, and make all reasonable arrangements therefor, as the highest care of a prudent

man would suggest as necessary to a safe passage."
This doctrine was also stated in *Thorson* v. *Groton &
Stonington Street Ry. Co.*, 85 Conn. 11, 14, 81 Atl. 1024.
It was also affirmed in *Kebbe* v. *Connecticut Co.*, 85
Conn. 641, 643, 84 Atl. 329.

But the plaintiff insists that the law of Connecticut
has been expressed to be otherwise in the case of
*Murray* v. *Lehigh Valley R. Co.*, 66 Conn. 512, 518,
34 Atl. 506. In that case the judge, in writing the
majority opinion, says: "A railroad corporation, by
the contract for a passage over its road, assumes the
obligation to exercise the highest practicable degree
of human skill to carry the passenger in safety, and
undertakes absolutely to protect him against any in-
jury or willful misconduct of its servants in the perform-
ance of its contract; and the obligation in these respects
continues until the contract is fully performed." The
court in the *Murray* case was treating of two classes
of injuries by a servant of a common carrier in the
performance of its contract, against which the carrier
undertakes to protect the passenger, viz.: (1) one
arising from the negligent misconduct of the servant,
and (2) one arising from the wilful misconduct of the
servant. This is perfectly clear from a reading of the
opinion and of the New York case (*Dwinelle* v. *New
York Central & H. R. R. Co.*, 120 N. Y. 117, 24 N. E.
319) upon which the court relies as its authority. The
passage quoted would have better expressed the posi-
tion which the opinion supports had the words "from
its negligence" been inserted after the word "injury."
To have charged, in the language of the request, that
the defendant undertook "absolutely to protect her
against any injury," would in effect be stating to the
jury that the defendant undertook to insure her against
any injury from every possible danger. Such is not the
law. The case before us charges negligence in the de-

fendant's agents and servants in not exercising reasonable care in the management of the trolley-car, and in not keeping a proper lookout for teams approaching upon a highway intersecting the highway on which the defendant's cars ran. It does not charge wilful misconduct, nor does the record present any situation calling for instruction from the court upon the obligation arising out of the wilful misconduct of the defendant's servants in the performance of its contract.

The plaintiff offered evidence to prove that the car upon which the plaintiff was riding was being driven at a speed prohibited by an ordinance of the city of New Haven, which provides that "upon approaching a crossing of intersecting streets upon level and descending ground, within a radius of one mile of the City Hall, the motorman shall shut off the power and have the car under control until the opposite crossing has been passed." Another ordinance of the city provides: "Every motorman or person having control of the speed of any railroad car, propelled by any motive power other than horses, shall strike a gong or bell several times on approaching the crossing of a street or the intersection of a street, and within one hundred feet of such crossing or intersection, and shall strike a gong or bell at such other places and times as to fully and amply warn any and all persons in the vicinity, and shall keep a vigilant lookout for all persons, and all teams, carriages and vehicles of all kinds." The trial judge was asked to instruct the jury upon this point as follows: "If the defendant motorman failed to do either of these acts, then it is a fact which you may consider in connection with the other evidence in the case as to whether the defendant was by its agents and servants guilty of negligence in respect to the accident, and if you find that the defendant's motorman might have, by the exercise of that high degree of care

which ought to be exercised with respect to passengers, seen the approaching runaway team, and that there was danger of collision between the runaway team and the car, and he failed to do that which he might have done either to stop the car and let the passengers.alight or to stop it before he reached the runaway, then the defendant is liable." . The jury were told: "In my judgment, on the evidence that has been submitted to you; they [these ordinances] neither add to nor detract from the plaintiff's case. That is, they do not require any higher degree of care than the law requires independently of the ordinances. In any event, an ordinance of the sort can only be looked at as one of the facts that you can take account of in determining whether or not reasonable care required some different conduct than that which is proved before you."

The jury were also instructed: "The by-law does not require that a car shall come to a stop before crossing an intersecting street, if the shutting off of power involves a stoppage. In my judgment, the by-law as properly construed, does not require the shutting off of power. The point is that the car shall be under control. Of course if a car has been running under power and at speed it will be necessary to shut off the power. But suppose a car is running very slowly indeed with the power off, there is nothing to shut off. If it has a low degree of power and the car under control, that is enough. The real purpose is to have the car under control at that place."

As we have said, the statement that the defendant owed the highest degree of care to its passengers was repeatedly made to the jury by the trial court. Upon the requests presented and the claims made by the plaintiff, the instructions given were sufficiently favorable to her upon this branch of the case. The jury were told, in substance, that proof of the violation of the

ordinance might be evidence of negligence. This accorded with the plaintiff's request to charge, and therefore we do not consider it. The jury were further told that the ordinance as to having the car under control did not add to the duty required of the carrier by law independently of the ordinance. This was equivalent to instructing the jury that the duty cast by the law upon the carrier of exercising the highest degree of care, included the duty of keeping the car under control upon approaching a crossing of intersecting streets. The plaintiff could not ask for a more favorable charge.

In relation to the ordinance as to the striking of a gong or bell, the jury were also instructed as follows: "That is manifestly of no sort of consequence here. The striking of a gong or bell is of no consequence to a passenger; the purpose of that is to warn an approaching vehicle at a street crossing. Here is that horse running away. What consequence is it whether that gong is struck or not. . . . 'Shall strike the gong or bell several times on approaching a crossing and within one hundred feet of such crossing or intersection,' and among other things, 'shall keep a vigilant outlook for all persons and all teams and carriages of all kinds.' That does not add anything to the general law of the degree of care that a company must exercise in the protection of its passengers. The motorman must be vigilant and careful; but just what constitutes vigilance and care depends upon the circumstances of the case."

The violation of the ordinance could have had no influence in causing the accident, and the trial court properly withdrew its consideration from the jury.

It is a well-settled rule that a person cannot recover from another for negligence based upon the violation of a statute or ordinance which is not intended for his protection. The rule which is applicable to actions for negligence based upon the violation of a statutory

duty is to all intents and purposes the same as the rule applicable to actions for negligence based upon a violation of a common-law duty.    Where there is no duty, there can be no negligence.    The statutory duty must be owing to the person injured, and not to some one else, in order that a violation thereof shall constitute actionable negligence.    9 Amer. & Eng. Ann. Cas. p. 427, and cases cited in notes on pages 427 and 428.

One reason of appeal relates to the court's refusal to charge as requested, and its charge as given, as to what effect certain evidence, which was given as to the intoxication of the plaintiff, would have upon her credibility as a witness.    The plaintiff had testified that she had been a healthy woman previous to the accident, which occurred in September, 1912, and that she was in good physical condition at that time.    She also stated that since the accident she had been in an extremely nervous condition and unable to work.    It was also testified to by the plaintiff that she was not intoxicated, and was not arrested at Savin Rock July 18th, 1913.    Two physicians who examined her for the first time in January, 1914, stated that she was then suffering from neurasthenia.    These witnesses also stated that in the absence of any other cause, assuming that she was in good health at the time of the accident, her nervous condition in January, 1914, was due to the accident.    The defendant offered evidence to prove, and claimed to have proven, that on July 18th, 1913, the plaintiff was found on a pier at Savin Rock in a drunken condition, when she was placed under arrest and taken to a lockup.    The defendant also claimed and offered evidence to show that the use of alcohol is one of the common causes of nervousness, and symptoms of nervousness and neurasthenia which the plaintiff manifested in January, 1914.    Upon this point the trial court properly refused to instruct the

jury as the plaintiff requested, that this evidence had no bearing on the case whatsoever, except merely on the question of the damage she had sustained by reason of the accident, and that it was not to consider it in any way as bearing upon her credibility or attacking her veracity as a witness. It was for the jury to say what effect this evidence would have as affecting the credibility of the plaintiff as a witness. The jury were so instructed by the court, and the plaintiff has nothing of which to complain in the refusal of the court to charge as requested, or in the charge as it was given in relation to this matter.

Several assignments of error are criticisms of single detached sentences of the charge as given, either for misstatements of law or of fact. None of these statements, when read, as they should be, with the context and the charge as a whole, can be said to be erroneous.

Complaint is also made that "the court erred in its entire charge to the jury in failing to lay down explicitly the law governing the case and applicable to the case, by leaving the principles of law governing the case undefined and not sufficiently explicit for the jury to understand," and "in making its charge argumentative in favor of the defendant, and unduly emphasizing such principles of law as favored the defendant and minimizing those that favored the plaintiff."

A careful examination of the record leads us to the conclusion that there is no substantial foundation for these criticisms.

There is no error.

In this opinion the other judges concurred.