MARIE LONGSTEAN *vs.* OWEN MCCAFFREY'S SONS.

Third Judicial District, Bridgeport, October Term, 1920.

WHEELER, C. J., BEACH, GAGER, CASE and CURTIS, JS.

The plaintiff sought to recover damages for injuries to her cottage on Long Island Sound, alleged to have been caused by the negligence of the defendant in not securing an empty coal barge which, with others, had broken away from its tug and drifted upon the beach, and in permitting it to remain there for an unreasonable time until it was broken up by storms and the pieces were driven by the wind and tide against the plaintiff's house. The plaintiff had a verdict and the defendant appealed. *Held:*—

1. That the complaint, by distinctly alleging that the negligence of the defendant in permitting the barges to break away from the tug and drift ashore, would not have done harm to the plaintiff's cottage except for the defendant's subsequent acts of negligence in allowing it to remain there,—had excluded the negligent breaking away of the barge as a cause of action; and therefore the trial court erred in submitting this ground of negligence to the consideration of the jury, including therein the question of the proper equipment of the barges.

2. That a Federal statute (10 U. S. Comp. Stat., 1916, § 9918) making it unlawful to discharge or deposit from any ship or floating craft any "refuse matter" of any kind in navigable waters of the United States, or to deposit material of any kind on the bank of navigable water where it might be liable to be washed into such navigable water,—was obviously intended for the protection of navigation and not to safeguard cottages upon the shore, and had no application to the situation disclosed by the record.

3. That the instructions as to the diligence required of the defendant after the stranding of the barge, should have expressed more clearly that its responsibility for resulting damage depended upon whether it took possession after the barge had stranded and thereafter failed to exercise reasonable care in its removal, thus causing, directly and proximately, the injury to the plaintiff's cottage, to which her own want of care, if any, did not materially contribute; and that the question of the defendant's reasonable care was to be determined by ascertaining what a reasonably prudent person would have done under similar circumstances, taking into account the location and condition of the barge, whether likely to be held by the rocks or not, without further security by anchor, chains, or cables, the season of the year, and the likelihood of storms and tides breaking up the barge.

Longstean v. McCaffrey's Sons.

4. That even if the defendant could have at once abandoned the barge upon the shore and thereafter relieved itself of liability, it certainly could not, after taking possession and making efforts to remove the vessel, thereafter abandon it and thus relieve itself of the duty of using reasonable care for the protection of owners of property who were themselves free from negligence.

5. That reasonable care under the circumstances required the defendant to do more than to anticipate merely ordinary tides and weather; and that it was bound to anticipate any storm or tide likely to happen at that season, although unusual in severity and of infrequent occurrence.

6. That the plaintiff had the right to build her cottage on the shore, even though it was in part below high-water mark; and was under no obligation to protect it by piling, bulkheads or otherwise, against the negligent acts or omissions of the defendant.

7. That evidence tending to show negligence of the defendant in permitting the barges to break from the tow line, and in not anchoring them before they drifted ashore, was properly excluded, since the complaint expressly disclaimed that the negligence of the defendant in these respects was the proximate cause of the injury to the plaintiff's cottage.

8. That the fact that barges like the one in question were in unusual demand at the time this one went ashore, was too remote to be admissible in evidence as tending to prove that the defendant used reasonable care in its efforts to save this particular barge.

One cannot recover for negligence based upon the violation of a statute which is not intended for his protection.

After a verdict for the plaintiff had been returned, the jury was asked for its answer to three interrogatories submitted to them, and the foreman replied that the jury had done nothing about them. The jury was then directed to retire to consider the interrogatories. They came back stating that they had not been able to agree, and upon being polled all confirmed this statement. *Held* that such procedure was wholly irregular; that the purpose of interrogatories was to explain or limit the general verdict, and that having been submitted and not withdrawn, the jury should have been required to answer them with the taking of their verdict, and before its acceptance.

Argued October 26th—decided December 22d, 1920.

ACTION to recover damages for injuries to the plaintiff's summer cottage situated on the shore of Long Island Sound, alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury

before *Haines, J.;* verdict and judgment for the plaintiff for $513 damages, and appeal by the defendant. *Error and new trial ordered.*

The plaintiff claimed to have proved the following facts: On October 14th, 1917, the defendant was engaged in towing seven empty coal barges through Long Island Sound, going westward. The captain of the tug changed the course of the tow, and at about the time he did so the hawser connecting the tug with the barges parted, and they went adrift. The tow line was made of wire and had been purchased new about a year before. The barges drifted to shore and were strewn along the beach from a point a little to the westward of plaintiff's cottage at the Silver Sands beach, out to Caroline River Point; the barge furthest to east was the *Wheeler-Howes* barge.

On October 15th plaintiff warned the man in charge of the barges, of the danger to her cottage from them unless they were removed. The *Wheeler-Howes* barge was an old one, and was liable at this season of the year to break up at any time with a storm of ordinary severity and its pieces to be washed up and against the summer cottages along this beach, including that of plaintiff; and this the defendant ought, in the exercise of reasonable care, to have known. On October 24th there was a severe wind which swung the barge around nearer plaintiff's cottage. On October 30th there was a wind of high velocity, and the barge was broken up and large pieces of it washed ashore, some hitting and damaging plaintiff's cottage. The place where these barges broke from the tow line was sufficiently shallow to have permitted the barges to have anchored, had they been provided with cables and anchors.

The defendant offered evidence to prove: That the towing cable connecting the tug with the barges was of wire one and one quarter inches in thickness, ap-

parently in good condition, and had been in use in the same work by the same tug for about a year, and been used to convey sixteen empty barges, and twelve to fourteen loaded barges, at a time; that the line parted without apparent reason; that the tug was unable to reach the barges owing to the shallow water; that the master of the tug went directly to New Haven and telephoned defendant's manager in New York, and early on the next morning its manager, the superintendent of a towing company, and an expert wrecker, came to New Haven, and on Tuesday all the barges except the *Wheeler-Howes* were pulled off; that defendant, beginning work on October 16th, endeavored to save this barge, and continued at work until October 24th, when a storm and the tide tore out some of their work, loosened her sides, and rendered it impracticable to make further attempts to save the barge; that defendant thereafter proceeded to strip the barge of things of value, and after October 28th did not thereafter make any further effort to secure or save the barge; that the storm of October 30th was one of unusual violence and was accompanied by an unusual tide; that both the storms of October 24th and 30th were of great and unusual severity and accompanied with unusual tides, and such as could not have been reasonably anticipated; that the defendant was not negligent in allowing the barge to break away; that after the barges were stranded, the *Wheeler-Howes* was in fact securely held by the rocks and beach, so that there was no apparent occasion for further anchoring or securing it; that defendant proceeded with reasonable care and diligence to save and float the barge until its efforts were rendered fruitless by the storm of October 24th; that thereafter the barge could not have been removed, nor could the parts or pieces been secured by the exercise of reasonable diligence; that damage to plaintiff's cottage,

if to any extent caused by pieces of the *Wheeler-Howes* barge, was only so caused in combination with the storms of October 24th and October 30th.

*Leonard M. Daggett* and *David L. Daggett*, for the appellant (defendant).

*Charles S. Hamilton*, for appellee (plaintiff).

WHEELER, C. J.  The acts of alleged negligence of the defendant are set up in the complaint in a single involved sentence of twenty-nine lines, which reads as follows: "2. On or about the          day of October, 1917, the defendant negligently allowed a number of empty coal barges to break from the towing tug and go adrift and land upon the beach about two thousand feet distant from where said cottage of the plaintiff was and is situated, and at such a distance that no harm would have occurred and no danger would have been imminent to the plaintiff's said premises and cottage but for the further negligent acts of the defendant, in that the defendant had ample time and warning from the harbor master of the city of New Haven to remove said barges, and did in fact remove all except one, and was offered abundant assistance to remove the other long before the damage hereinafter described was done by the remaining barge to the premises and cottage of the plaintiff, as hereinafter described; but the defendant negligently allowed one of said barges to remain on the shore and on the beach and allowed the same to remain there for a period of about a week and for an unreasonable length of time, and for a length of time which was unreasonable and dangerous to adjoining property, for the defendant knew, or by the exercise of reasonable care might have known, that another storm was likely to break said barge up, thereby doing

damage to the premises and cottage of the plaintiff and to other property, and the defendant was warned that said barge was in such position and situation that it was a danger to the plaintiff's said premises and to other cottages on the shore at that place, and that a storm was likely to arise at any time at that season of the year and break up said barge and throw the parts of it upon the premises of the plaintiff and others and thereby do considerable damage."

The plaintiff's counsel does not attempt to state in his brief the ground or grounds of negligence which he claims to have thus set up; but in his oral argument, and evidently in the trial court, he claimed that the complaint set up one cause of action for negligently allowing this barge to break away and go ashore, and another cause of action in permitting her to remain on the beach from October 14th to October 30th, when defendant ought to have known that a storm was likely to arise and break up the barge and cause the pieces of the barge to damage plaintiff's cottage, and especially as defendant had been warned of this precise danger.

As we read paragraph two it sets up one ground of negligence only, the acts and omissions subsequent to the beaching of the barge. It does not set up a case of negligence by reason of the barges breaking loose through defendant's use of a defective hawser in towing these barges. It distinctly alleges that the negligence in permitting the barges to break away and drift ashore, would not have done harm to plaintiff's cottage but for the further negligent acts of the defendant, subsequent to this time. By her express allegation, the plaintiff excludes the negligent breaking away of the barge as a ground of negligence.

The trial court, misled by the obscure manner in which paragraph two of the complaint was drawn—which on casual inspection would be apt to lead to this

construction—erroneously instructed the jury that this was one of the grounds of negligence alleged. And in this connection the court submitted to the jury the question: "Did the defendant have the boats equipped with anchors, chains, or cables, by which the crews could have prevented the barges from drifting ashore?" No such ground of negligence is found in the complaint; yet the court concluded its instruction upon this point: "I shall leave it to you, gentlemen of the jury, to decide as a matter of fact whether, if the defendant failed to equip the barges with anchors and chains or cables, it was negligent or not." This was error.

Defendant also complains of the instruction to the jury, "that if you find that this defendant permitted his barge to lie unsecured on the beach, and that so lying there it was liable to be washed out into these navigable waters by ordinary high tides, by storms, floods or otherwise, voluntarily abandoning the boat there, on or about the 25th of October, then if you so find, the defendant violated this statute and was guilty of negligence in so doing; and if that negligence was the proximate cause of this plaintiff's injury, then this defendant was guilty of actionable negligence."

The statute upon which the court based its charge (9 Fed. Stat. Ann. (2d Ed.) p. 58; 10 U. S. Comp. Stat. 1916, § 9918) provides, in the first part, that it shall not be lawful "to throw, discharge, or deposit" from or out of any ship, barge, or floating craft of any kind, any refuse matter of any kind other than that flowing in street or sewer in liquid state, into any navigable waters of the United States. Depositing refuse in any navigable waters of the United States from or out of any floating craft constitutes the offense of the statute, and its violation would furnish, if it occasioned injury and was the proximate cause of the damage, a cause

of action for negligence for the damage done. *Myrtle Point Transportation Co.* v. *Port of Coquille River*, 86 Ore. 311, 168 Pac. 625.

A barge beached upon the shore of navigable water cannot be held to be "refuse," within the meaning of this Act, whether the barge came there through fault of the owner or unavoidable accident, or whether it was abandoned from the time it became beached. And by the terms of this offense the refuse must have been thrown, deposited, or discharged, or been permitted to be thrown, discharged, or deposited, from or out of the barge. None of the conditions constituting the offense described in the first portion of the statute are present in the situation detailed before us.

An even more controlling reason made this part of the statute, and all of it, inadmissible. The court, as appears from the instruction, relied upon the latter part, which reads, "it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise." This portion of the statute was intended to secure the prevention of the impeding or obstruction of navigation by depositing, or suffering to be deposited, any kind of material, refuse or otherwise, on the bank or shore of navigable water, or on the bank or shore of its tributary, where the same shall be liable to be washed into such navigable water. Protection of navigation was the purpose of the statute.

The violation of a statute which forbids the doing of certain acts does not give a cause of actionable negligence in favor of private individuals, unless the statute was designed to prevent such injuries as were suffered by the individual claiming damage, and unless

it imposes upon the one violating the statute a specific duty for the protection or benefit of him who claims damage for the violation. 1 Thompson on Negligence, § 12; 20 R. C. L. p. 38, § 33. "The violation of the ordinance could have had no influence in causing the accident, and the trial court properly withdrew its consideration from the jury. It is a well-settled rule that a person cannot recover from another for negligence based upon the violation of a statute or ordinance which is not intended for his protection. The rule which is applicable to actions for negligence based upon the violation of a statutory duty is to all intents and purposes the same as the rule applicable to actions for negligence based upon a violation of a common-law duty. Where there is no duty, there can be no negligence. The statutory duty must be owing to the person injured, and not to some one else, in order that a violation thereof shall constitute actionable negligence." *Anthony* v. *Connecticut Co.*, 88 Conn. 700, 707, 92 Atl. 672. And it must also appear that the violation of the statute was the proximate cause of the injury sustained. *Feehan* v. *Slater*, 89 Conn. 697, 701, 96 Atl. 159.

This statute was for the protection of navigation. It was not designed for the protection or benefit of cottagers upon the shore. This is apparent upon the slighest inspection of the statute. Had this been a proper subject upon which to instruct the jury, the instruction would have been erroneous in omitting the essential element that the pieces of the barge so washed upon the shore did, or were apt to, impede or obstruct navigation.

The defendant assigns as error the refusal of the court to follow its requests upon the subject of the rule of diligence it was required to exercise after the stranding of the barge, and the failure of the court to give an adequate statement of what constituted proximate

cause. In the condition of the pleadings the jury should
have been instructed with somewhat more clearness,
that if they found the barge was cast upon the shore
through unavoidable accident and was broken up by
the elements and its pieces thrown against plaintiff's
cottage by the washing of the waves, the defendant
would be responsible for the resultant damage only in
case it took possession of the barge after it was cast
upon the beach and thereafter failed to exercise reason-
able care in removing the barge, and the damage done
was proximately caused by such failure, to which the
plaintiff did not materially contribute by her own want
of reasonable care; and further, that the question of
defendant's reasonable care was to be determined by
ascertaining what a reasonably prudent person would
have done under similar circumstances, among which,
if found proven, were, the location and condition of
the barge, and to what extent, if any, the defendant
might have anticipated that the rocks would hold her,
the season of the year, and the liability of storms or
high wind or high tide breaking her up. The jury
should also have considered what measures, if any,
the defendant should have taken to either secure the
barge in the position in which she lay, by anchors,
chains or cables or other means, or to remove her.

The court was right in refusing to charge the jury, as
defendant requested, that "if a vessel be sunk or
wrecked without wilful fault of the owner, and the owner
subsequently abandons the possession and control of the
wrecked or sunken vessel, he is not thereafter liable
for injuries which may be caused by such vessel." If
this rule is applicable to a barge cast upon the shore,
concerning which we express no opinion, the abandon-
ment must occur immediately upon the wrecking or
sinking of the barge. The defendant by taking pos-
session of this barge as it lay upon the beach, and by

its efforts to secure and remove her, could not there-
after abandon her and thus relieve itself of the duty of
using reasonable care to remove the barge which it had
assumed upon taking such possession.

The court was not in error in refusing to give the
instruction so requested. The defendant kept pos-
session of this barge, and actively endeavored to take
her off the beach from October 14th to October 24th.
Whether it subsequently abandoned her was a disputed
issue. But whether it did or not, it could not thereby
relieve itself of the responsibility of using reasonable
care in preventing this barge from injuring owners of
property without their own concurring negligence. To
permit such defendant to escape liability would be
unjust to adjoining owners of property, who might
have protected their own interests had they not reason-
ably anticipated that defendant, having taken posses-
sion and control, would continue in it.

We have no occasion to pass upon the legal correct-
ness of the instruction as requested.

The defendant's fifth request, was that defendant was
only to be required to anticipate those circumstances
of tide and weather which might ordinarily be expected
to occur, and not storms of unusual character or sever-
ity; and that if the jury found the storm of October
24th was of such character, it was not defendant's duty
to anticipate it. We think the court properly refused
this charge. Reasonable care in the admitted situation
meant great care, and great care required the defendant
to anticipate any storm or tide liable to occur at that
season, even though it was unusual in severity and of
infrequent occurrence.

Defendant's seventh request was that "if you find
that it would have been possible with reasonable effort
for the plaintiff by the building of a bulkhead, by piling,
or by other means, to protect her property against

damage from wreckage, and that a reasonably prudent person owning a cottage located as was the plaintiff's cottage would have so protected the cottage, then the location of the cottage and the plaintiff's failure to protect the same must be regarded as a materially contributing cause to her damage, and your verdict should be for the defendant." The court correctly charged the jury upon this point as follows: "In other words, her action in building and maintaining it there was a perfectly legal one even though the house was in part below the high-water mark, and she was justified, as a matter of law, in anticipating that she would not be injured in the enjoyment of that legal right by any unlawful or negligent act or omission of any third party; and the law did not require her to set bulkheads or piles to protect herself against the illegal or negligent acts or omission of any one interfering with the legal rights which she was thus enjoying in her house. The plaintiff, in maintaining her cottage in this position, was not guilty of contributory negligence as matter of law." Plaintiff's right to build her house where she did, even though in part below high-water mark, was undoubted. *Orange* v. *Resnick,* 94 Conn. 573, 109 Atl. 864, 865. And she was under no obligation to protect her cottage against the negligent conduct of the defendant. That her cottage was exposed to damage from wreckage, did not require her, by bulkhead or otherwise, to protect her cottage from wreckage which defendant's negligence caused to be driven against it and to do it damage.

Other assignments of error in the charge are either covered by the charge as given, or by our discussion, or else do not in our opinion constitute reversible error.

The rulings on evidence may be disposed of briefly. Mr. Tarr's testimony as to the weather, was offered in support of plaintiff's claim to recover upon the ground

of defendant's negligence in permitting the barges to break from the tow line. The geological survey map was offered to show the depth of water over which these barges drifted to the beach, as tending to prove that the defendant could, in the exercise of reasonable care, have anchored the barges in these waters and so have avoided the damage to plaintiff's cottage. The court was right in excluding both offers. The complaint does not allege, as we have shown, that the negligent breaking of the barges from the tow was the proximate cause of the damage to the plaintiff's cottage.

Defendant asked its witness, on his direct examination, the following question: "Mr. McCaffrey, in October, 1917, what was the condition in your trade with respect to demand and use of barges of the character of this barge?" The question was claimed for the purpose of showing that defendant had at this time a particular reason for attempting to save this barge. Defendant intended to claim that this tended to prove that it exercised reasonable care in the effort it expended in attempting to save the barge. The court sustained the objection that this evidence was incompetent. The ruling was right. The evidence was too remote.

Other rulings are too plainly right to make discussion of them useful.

The court submitted, at the request of the defendant, three interrogatories to the jury. After the verdict in favor of the plaintiff had been rendered, the jury were inquired of as to the finding upon these interrogatories, and the foreman replied that they had done nothing about them. In reply to the court's question of defendant's counsel as to whether he wished to insist upon the interrogatories, and stating that if he did the court must send the jury out to make their finding, counsel for defendant said that this was within the court's discretion. After some further discussion between the

court and counsel and the foreman, the jury retired and later returned with their finding, endorsed upon these interrogatories: "The jury fail to agree." The jury were polled as to their agreement upon their answer to the interrogatories as submitted, and all answered in the affirmative, and the court thereupon accepted the finding upon the interrogatories.

The procedure taken was wholly irregular. The sole purpose of interrogatories is to obtain a special finding by the jury to explain or limit the general verdict. *Bernier* v. *Woodstock Agricultural Soc.*, 88 Conn. 558, 562, 92 Atl. 160; *Nowsky* v. *Siedlecki*, 83 Conn. 109, 118, 75 Atl. 135. The trial court should not submit to the jury interrogatories which do not in fact serve this purpose. When, and to what extent, interrogatories shall be allowed, is within the reasonable discretion of the trial court. *Freedman* v. *New York, N. H. & H. R. Co.*, 81 Conn. 601, 614, 71 Atl. 901; *Case* v. *Clark*, 83 Conn. 183, 195, 76 Atl. 518; *Cullum* v. *Colwell*, 85 Conn. 459, 465, 83 Atl. 695. It would follow that the trial court may, at any time before answer is made by the jury, withdraw the interrogatories from the consideration of the jury; and if the discretion thus exercised is reasonable, reversible error cannot be predicated upon this action. But if not withdrawn, the jury should be required to answer the interrogatories with the taking of the verdict. The interrogatories as answered should be received and filed as a part of the verdict. *Bernier* v. *Woodstock Agricultural Soc.*, 88 Conn. 558, 563, 92 Atl. 160. And the verdict should not be accepted until after the interrogatories have been answered.

The proper procedure would require the clerk to take the verdict up to the point of its acceptance by the court, and then to take the answers to the several interrogatories, and thereafter to take the court's acceptance of the verdict as rendered together with the

interrogatories as answered, and to continue the taking of the verdict according to our usual practice.

In view of our conclusions we do not find it necessary to pass upon the claimed corrections of the finding.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.