*513
 
 I
 

 INTRODUCTION
 

 BLUE, J.
 

 This motion to strike presents a vexing question of indemnification law arising out of a tragic accident. The relevant facts are taken from the pleadings, as they must be at this stage of the proceedings.
 

 The plaintiff, Troy Robillard, claims that on June 16, 1991, he was a guest of Arthur Redman and Linda Redman (Redmans) at their home in Bristol. The Redmans invited him to swim in their pool. The plaintiff dove into the pool from an adjacent deck. As a result of this dive, the plaintiff broke his neck and became a quadriplegic.
 

 The plaintiff brought this action against three defendants: Asahi Chemical Industry Company (Asahi), which manufactured the pool; North American Marketing Corporation (North American), which purchased the pool from Asahi and sold it to the Redmans; and Paradis Construction, Inc. (Paradis), which assembled and installed the pool. He did not sue the Redmans. The gist of his suit against Asahi, North American and Paradis is that the pool was defective and dangerous because it “was constructed without proper depth markings” and contained no warnings as to the danger of diving into the pool.
 

 North American’s motion to implead the Redmans as third party defendants was granted by the court,
 
 Corradino, J.
 
 North American subsequently served the Redmans with a third party complaint. That complaint consists of two counts. The first count seeks indemnification. It alleges that the Redmans were negligent in that they failed to maintain the pool and the deck in a reasonably safe condition, that they “failed to adequately maintain the water depth markings on the pool,” that they permitted “an intoxicated person” to dive in the pool in an unsafe manner, and that they failed to exercise reasonable care under the circumstances. The
 
 *514
 
 first count further alleges that the Redmans were in control of the pool, the deck, and the premises to the exclusion of North American, that any negligence on North American’s part was passive, and that the negligence of the Redmans was active, direct, and primary. The first count finally alleges that there was an independent legal relationship between North American and the Redmans by virtue of the Redmans’ purchase of the pool from North American. The second count seeks contribution. That count alleges that the plaintiffs injuries were caused by the Redmans’ negligence and that the Redmans are liable to North American for all or part of the plaintiffs claim against North American.
 

 The Redmans have now filed a motion to strike the entire third party complaint. They essentially allege that the indemnification count is legally insufficient because it fails to allege an independent legal relationship, that the contribution count is legally insufficient because the right to contribution attaches only after a final judgment has been rendered, and that apportionment of liability pursuant to General Statutes § 52-572h is barred by the statute of limitations.
 

 These contentions will be considered in turn. It will be helpful to remember at the outset, however, that indemnification, contribution, and apportionment are entirely distinct theories. Apportionment refers to an initial calculation of the proportionate share of damages for which each party is liable. As will be seen, however, the specific apportionment statute relied upon by the Redmans, § 52-572h, is inapplicable to this case. In contrast, both indemnification and contribution are obviously relevant to this case since they are the doctrines relied upon by North American in its complaint. “Indemnification claims reimbursement in full from one primarily liable, while contribution claims reimbursement of a share of a payment made by one tortfeasor that was attributable to a joint tortfeasor.”
 
 United States
 
 v.
 
 Yale New Haven Hospital,
 
 727 F. Sup. 784, 786 n.2 (D. Conn. 1990).
 

 
 *515
 
 II
 

 INDEMNIFICATION
 

 The Connecticut case law on indemnification has not been a model of consistency. In order to understand the present state of the law, some background is necessary.
 

 Under the traditional common law, established in England centuries ago, no contribution could be claimed between joint wrongdoers.
 
 Merryweather
 
 v.
 
 Nixan,
 
 101 Eng. Rep. 1337 (1799). In
 
 Bailey
 
 v.
 
 Bussing,
 
 28 Conn. 455 (1859), however, the Connecticut Supreme Court recognized an important exception to this rule. The facts of
 
 Bailey
 
 are worth describing. George Bailey was an executor of the estate of Aaron Turner. Turner had an interest in a stagecoach driven by Thomas Bus-sing. Bussing drove the horses so carelessly that they ran away with the coach and injured a woman. The injured woman brought suit against Turner, Bussing, and a third defendant, and recovered a judgment against all three.
 
 Haight
 
 v.
 
 Turner,
 
 21 Conn. 593 (1852). Turner paid the entire judgment. Bailey, as Turner’s executor, subsequently sued Bussing, claiming contribution.
 
 Bailey
 
 v.
 
 Bussing,
 
 supra, 455. The Supreme Court held that this claim was appropriate. Id., 459. In a memorable passage, the court said that “[t]he form of action . . . is not the criterion. We must look further. We must look for personal participation, personal culpability, personal knowledge. If we do not find these circumstances, but perceive only a liability in the eye of the law, growing out of a mere relation to the perpetrator of the wrong, the maxim of law that there is no contribution among wrong doers is not to be applied.” Id.
 

 The Supreme Court’s next case of doctrinal importance
 
 was Preferred Accident Ins. Co.
 
 v.
 
 Musante, Berman & Steinberg Co.,
 
 133 Conn. 536, 52 A.2d 862 (1947). The Preferred Accident Insurance Company (Preferred)
 
 *516
 
 insured a restaurant in Waterbury. The Musante, Berman and Steinberg Company (Musante) sold produce to the restaurant. While delivering the produce, two Musante employees left open a trap door to the restaurant’s cellar. A man walking on the sidewalk tripped over the door, fell into the cellar, and was injured. He successfully sued both the restaurant and Musante.
 
 Tully
 
 v.
 
 Demir,
 
 131 Conn. 330, 39 A.2d 877 (1944). Preferred paid one half of the judgment on behalf of the restaurant and brought suit against Musante to recover the sum it had paid.
 
 Preferred Accident Ins. Co.
 
 v.
 
 Musante, Berman & Steinberg Co.,
 
 supra, 536. The Supreme Court set aside a demurrer, holding that Preferred had stated a legally sufficient claim. Id., 543. The rule of
 
 Bailey
 
 v.
 
 Bussing,
 
 supra, 28 Conn. 459, was controlling. The court articulated that rule, however, by drawing a distinction between active and passive negligence. “The plaintiff . . . cannot recover unless he shows that the active negligence and wrong which caused the injury in question were the negligence and wrong of the defendant or, in other words, that the defendant was the party primarily liable for the wrongful act which occasioned the injury . . . .” (Internal quotation marks omitted.)
 
 Preferred Accident Ins. Co.
 
 v.
 
 Musante, Berman & Steinberg Co.,
 
 supra, 542. The court further explained that “[wjhere . . . one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury.” Id., 543.
 

 The rule of
 
 Bailey
 
 and
 
 Preferred Accident Ins. Co.
 
 was further refined in
 
 Kaplan
 
 v.
 
 Merberg Wrecking Corp.,
 
 152 Conn. 405, 207 A.2d 732 (1965). Oscar Kaplan had operated a supermarket in a building in Meriden that the Merberg Wrecking Corporation (Merberg) had
 
 *517
 
 been hired to demolish. At some point after demolition had begun, a pillar of the building collapsed onto a public sidewalk, killing an infant in a baby carnage. The administrator of the infant’s estate sued both Kaplan and Merberg. Merberg settled, and a substantial judgment was subsequently obtained against Kaplan.
 
 Bonczkiewicz
 
 v.
 
 Merberg Wrecking Corp.,
 
 148 Conn. 573, 172 A.2d 917 (1961). Kaplan then brought an action against Merberg for indemnification. The Supreme Court held that Kaplan could not prevail because he had failed to prove that Merberg was in control of the situation to his exclusion.
 
 Kaplan
 
 v.
 
 Merberg Wrecking Corp.,
 
 supra, 415. In making this ruling, however, the court carefully articulated the necessary elements of an indemnification action. Id., 416. It reiterated the distinction between active and passive negligence that it had drawn in
 
 Preferred Accident Ins. Co.
 
 Id. The indemnitee must prove, the court explained, “that the negligence with which it had been found chargeable was passive or secondary, while the indemnitor had been negligent and in a manner which was active and primary.”
 
 Kaplan
 
 v.
 
 Merberg Wrecking Corp.,
 
 supra, 415. The indemnitee then must prove that the indemnitor “was the party primarily liable” under the rule of
 
 Preferred Accident Ins. Co.
 
 (Internal quotation marks omitted.) Id., 416. This element is to be satisified by a four-pronged test. Kaplan was required “to prove that at the time of the accident (1) Merberg was negligent; (2) Merberg’s negligence, rather than the negligence with which these plaintiffs were found chargeable, was the direct, immediate cause of the accident and the resulting injuries and death; (3) Merberg was in control of the situation to the exclusion of these plaintiffs . . . (4) the plaintiffs did not know of Merberg’s negligence, had no reason to anticipate it, and could reasonably rely on Merberg not to be negligent.” (Citations omitted.) Id.
 

 This was the state of the law when
 
 Therrien
 
 v.
 
 Safeguard Mfg. Co.,
 
 180 Conn. 91, 429 A.2d 808 (1980), was
 
 *518
 
 decided.
 
 Therrien’s
 
 facts are incompletely stated by the court. The following summary is taken from
 
 Therrien
 
 v.
 
 Safeguard Mfg. Co.,
 
 Conn. Supreme Court Records & Briefs, February Term, 1980, Pt. 4. Paul Therrien, the plaintiff, was employed by the Torin Corporation (Torin). He operated a heavy press. In operating the press, he placed his hands into wristlets, which were part of a guard manufactured by the Safeguard Manufacturing Company (Safeguard). The function of the guard was to remove automatically the hands of the operator when the press was in operation. While the plaintiff was operating the press, a chain on the guard broke, and his right hand was not removed. The hand was crushed. The plaintiff sued Safeguard claiming that it had designed the guard in such a manner that the wrist-lets could catch on a die and fail to remove the operator’s hands.
 

 Safeguard subsequently filed a third party complaint against Torin, alleging that Torin was liable to it for any loss resulting from the plaintiffs injury. Safeguard was able to bring this action prior to judgment because, in 1965, shortly after the decision in
 
 Kaplan,
 
 the legislature enacted General Statutes § 52-102a, allowing the impleading of third parties by defendants. Safeguard specifically alleged that the guard required “adjustment, inspection and maintenance in order to perform the functions for which it was sold” and that the plaintiffs accident “was caused by Torin’s breach of its obligation to Safeguard to regulate, adjust, maintain and inspect [the] guard.”
 

 The Supreme Court held that Safeguard’s third party complaint failed to state a legally sufficient cause of action.
 
 Therrien
 
 v.
 
 Safeguard Mfg. Co.,
 
 supra, 180 Conn. 95. The court’s opinion focuses on the question of duty. The court found no duty flowing from purchaser to seller. Id. There was no express contract of indemnification. Safeguard claimed that an implied contract
 
 *519
 
 existed, but the court explained that “[a] contract implied in law requires . . . that there be an obligation created by law that imposes a duty to perform.” Id. No such obligation is created by the fact of purchase alone. If Torin’s alleged failure to maintain the guard was tortious, it had no obligation to indemnify Safeguard unless it was “the actively negligent party.” Id.
 
 Kaplan
 
 and
 
 Preferred Accident Ins. Co.
 
 were cited as authorities for the latter proposition. Id., 95-96. The third party complaint had, however, failed to allege active negligence. Hence, it was properly stricken. Id., 96.
 

 Therrien
 
 and its predecessors were common-law decisions. In 1979, however, the Connecticut legislature enacted our current product liability act. General Statutes § 52-572m et seq. That act provides that statutory product liability claims are to be asserted in lieu of all common-law claims against product sellers. General Statutes § 52-572n (a). It further provides that “a product seller may implead any third party who is or may be liable for all or part of the claimant’s claim” within one year of the date of the first party action. General Statutes § 52-577a (b). The trier of fact is to determine the percentage of responsibility allocated to each party, considering “on a comparative basis, both the nature and quality of the conduct of the party.” General Statutes § 52-572o (c). The court is to “enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors” and “specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.” General Statutes § 52-572o (d). The Supreme Court’s next case of doctrinal importance,
 
 Malerba
 
 v.
 
 Cessna Aircraft Co.,
 
 210 Conn. 189, 554 A.2d 287 (1989), was brought pursuant to this act.
 

 Malerba,
 
 like
 
 Therrien,
 
 provides an incomplete statement of facts. The following summary is taken from documents contained in the record of the case. James
 
 *520
 
 Malerba was the pilot of an airplane manufactured by Cessna Aircraft Corporation (Cessna). The plane crashed, injuring him. He sued Cessna, claiming that the plane was defective. He specifically claimed that the plane’s fuel shut off valve was manufactured in such a way that, when it was placed in the “on” position, it would creep toward the “off’ position, cutting off the fuel to the engine in mid-flight.
 

 Cessna subsequently filed a third party complaint against two third party defendants: Edward Schuler, the plane’s owner; and Peter Lindblom, the plane’s mechanic. It claimed that both Schuler and Lindblom had been actively and primarily negligent and that this negligence had caused the accident in question. Cessna specifically claimed that it had “cured” the defective fuel valve condition “by safety-wiring and securing the fuel valve in the ‘on’ position.” It further claimed that at the time of the accident, the fuel valve was not safety-wired in the “on” position. It attributed this fact to Schuler, who, as owner, controlled the plane to the exclusion of Cessna. It additionally alleged that Lindblom had failed to inspect the fuel valve to make sure that it was safety-wired in the “on” position.
 

 Although the Appellate Court subsequently opined that a “contractual relationship” existed in
 
 Malerba
 
 between Cessna and the third party defendants;
 
 Atkinson
 
 v.
 
 Berloni,
 
 23 Conn. App. 325, 328, 580 A.2d 84 (1990); the record plainly shows that this was not, in fact, the situation. The relationship between Cessna and Schuler was far more attenuated than the relationship between Safeguard and Torin in
 
 Therrien.
 
 Although Cessna alleged that Schuler was the owner of the plane, it did
 
 not
 
 allege that Schuler had purchased the plane from Cessna. For all that appears in the record, Schuler may have purchased the plane from a third party. The relationship between Cessna and Lindblom was, if anything, even more attenuated. Cessna did not allege that
 
 *521
 
 it employed Lindblom. It simply alleged that he “performed required maintenance of the aircraft.”
 

 Malerba
 
 did not, however, concern itself with the question of relationships. It focused, instead, upon a preliminary point of law. The trial court struck the complaint, reasoning that the then-recent case of
 
 Kyrtatas
 
 v.
 
 Stop & Shop, Inc.,
 
 205 Conn. 694, 535 A.2d 357 (1988), had abrogated common-law indemnification principles in cases brought under the product liability act.
 
 Kyrtatas,
 
 however, had struck down a cross complaint between existing defendants in a product liability action. When the Supreme Court considered
 
 Malerba,
 
 it limited
 
 Kyrtatas
 
 to its facts.
 
 Malerba
 
 v.
 
 Cessna Aircraft Co.,
 
 supra, 210 Conn. 198 n.9. The court saw
 
 Malerba
 
 as addressing the conceptual question of whether “an indemnification action may
 
 ever
 
 be pursued against the background of a statutory comparative liability action where the trier of the first party claim against the various defendants is required to apportion liability among the plaintiff and all the defendants.” (Emphasis added.) Id., 196. Relying on
 
 Preferred Accident Ins. Co.,
 
 it answered this question in the affirmative. Id., 197-98. The court, citing
 
 Kaplan,
 
 noted that the indemnitee must prove that the indemnitor’s negligence was active and primary. Id., 198. It concluded that “common-law indemnification continues as a viable cause of action” in product liability cases. Id. It then held that the trial court had erred in striking the complaint. Id., 199. The question of duty, which had loomed so large in
 
 Therrien,
 
 was not mentioned. Neither was
 
 Therrien.
 

 At one level,
 
 Malerba
 
 and
 
 Therrien
 
 can plainly coexist.
 
 Malerba
 
 can be read as simply holding what it says it holds — viz., that common-law indemnification can be a viable cause of action in a product liability case. That general statement plainly contradicts nothing in the court’s prior jurisprudence. The devil, however, is in the details.
 
 Malerba
 
 ended up reversing the trial court’s
 
 *522
 
 decision to strike the third party complaint in question. That meant, or seemingly meant, that that same third party complaint was now viable. But
 
 Therrien
 
 had emphatically held that
 
 duty
 
 is an essential element of a viable indemnification claim. Duty is exceedingly hard to find in the
 
 Malerba
 
 scenario. Does this mean that
 
 Malerba
 
 threw the requirement of duty to the winds? Perhaps so, but if that is the case, the court’s failure to recognize this fact or to cite
 
 Therrien
 
 in any way is puzzling in the extreme. On the other hand, the court has long recognized the doctrine that it need not be concerned with the trial court’s specific theory in support of the judgment below. If that judgment is correct for any reason, it must stand.
 
 Groton
 
 v.
 
 Commission on Human Rights &
 
 Opportunities, 169 Conn. 89, 101, 362 A.2d 1359 (1975). Using this doctrine,
 
 Malerba
 
 could have stated that the trial court had erred in determining that indemnification claims can
 
 never
 
 be brought in product liability cases but nevertheless held that the trial court reached the right result because
 
 this
 
 indemnification claim fails for want of duty. The court, however, did not utilize this approach.
 

 What, then, is to be made of Malerba? The key to this puzzle lies in a doctrine of appellate law long recognized by the Supreme Court of the United States: “While undoubtedly an affirmance of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded — even though all are not specifically referred to in the opinion — yet no such conclusion follows in case of a reversal. It is impossible to foretell what shape the second trial may take or what questions may then be presented. Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided.”
 
 Mutual Life Ins. Co.
 
 v.
 
 Hill,
 
 193 U.S. 551, 553-54, 24 S. Ct. 538, 48 L. Ed. 788 (1904).
 

 
 *523
 
 The proposition that
 
 Malerba
 
 adjudicated only the questions it discussed is reinforced by
 
 Ferryman
 
 v.
 
 Groton,
 
 212 Conn. 138, 561 A.2d 432 (1989), a case decided only four months later.
 
 Ferryman
 
 considers the question of whether an employee-employer relationship between a plaintiff and a third party defendant bars a claim for indemnity brought by the original defendant against the third party defendant. It concludes that this relationship is not a bar’. In reaching this conclusion,
 
 Ferryman
 
 focuses once again on the question of duty.
 

 Because
 
 Ferryman,
 
 like
 
 Therrien
 
 and
 
 Malerba
 
 before it, does not give a full statement of facts, the following summary is taken from documents contained in the record. See
 
 Ferryman
 
 v.
 
 Groton,
 
 Conn. Supreme Court Records
 
 &
 
 Briefs, April Term, 1989, Pt. 3, Record pp. 2-4 and 10-15. The plaintiff, Eugene Ferryman, was the administrator of the estate of Michael Ferryman, who was employed by the Electric Boat Division of the General Dynamics Corporation (Electric Boat). In the scope of his employment, Michael Ferryman entered an area containing an electrical substation to cut grass. He came into contact with a high voltage line and was killed. The plaintiff sued the city of Groton, claiming that the city owned and controlled the substation. He further claimed that the city had been negligent in failing to warn the decedent. The city then served a third party complaint on Electric Boat. The third party complaint alleged that the substation was, in fact, owned and controlled by Electric Boat and that the city owned only the transformers and the metering equipment at the substation. It further alleged that on the day of the incident in question another Electric Boat employee had unlocked the gate to the substation enabling Michael Ferryman to enter it.
 

 Ferryman
 
 upholds the viability of the third party complaint just described. Its analysis is of considerable interest. It notes that “[t]he third party complaint here
 
 *524
 
 was carefully drawn so as to allege circumstances that would give rise to an application of the
 
 Kaplan
 
 doctrine.”
 
 Ferryman
 
 v.
 
 Groton,
 
 supra, 212 Conn. 143. It holds, however, that the active versus passive negligence principles of
 
 Kaplan
 
 “are simply inadequate to establish the independent relationship that would obviate the operation of the exclusive remedy doctrine” of the Workers’ Compensation Act. Id., 145. There must be “an independent, legal duty” owed by the employer to the owner. Id., 144. But, the court went on to say, such a duty at least potentially exists here. Id., 146. “[T]he complaint discloses the essentials of either a co-owner relationship, a bailor-bailee relationship or a lessor-lessee relationship, any one of which could contain the express or implied independent, legal duty that would serve to preclude the operation of the exclusive remedy provisions of [the Workers’ Compensation Act].” Id.
 

 Ferryman
 
 thus marks a return to the requirement of duty. That requirement is by no means limited to cases involving the Workers’ Compensation Act. Rather, the requirement of duty is deeply rooted in the law. The existence of an independent legal duty can be found in
 
 Therrien
 
 and each of its predecessors. Thus, in
 
 Bailey,
 
 Bussing was Trumer’s servant. In
 
 Preferred Accident Ins. Co.,
 
 the restaurant had a contractual relationship with Musante to deliver produce. In
 
 Kaplan,
 
 Merberg had a contractual relationship with Kaplan to demolish the building. There was, admittedly, no such relationship present in
 
 Malerba,
 
 but
 
 Malerba
 
 does not address the requirement of duty and, for reasons already stated, cannot be read as modifying this requirement.
 

 In expressly requiring the existence of a duty grounded in an independent legal relationship,
 
 Ferryman
 
 and
 
 Therrien are
 
 not only consistent with each other, but with the law prevailing in the majority of jurisdictions. Most courts have held that “[t]hird-party
 
 *525
 
 actions for indemnity against a subsequent user are not maintainable by the manufacturer or seller of a defective product, since in the absence of a contract providing otherwise, the user of a product supplied by another does not owe the supplier any duty of care in connection with the use of the item such as to create a duty upon the user to indemnify the supplier.” 4 American Law of Products Liability (T. Travers et al. eds., 3d Ed. 1987) § 52.61. This rule is founded both on contractual and policy grounds. In the first place, as the Supreme Court of New Hampshire has pithily stated, “No duty flows upstream from the purchaser to the manufacturer.”
 
 William H. Field Co.
 
 v.
 
 Nuroco Woodwork, Inc.,
 
 115 N.H. 632, 634, 348 A.2d 716 (1975). “To find that when a purchaser buys a product, he makes an implied contract with the [seller] to use that product in such a way as not to bring liability upon the [seller] ‘would be stretching the concept of contract out of all relation to reality.’ ”
 
 Mosely Machinery Co.
 
 v.
 
 Gray Supply Co.,
 
 310 Ark. 214, 217, 833 S.W.2d 772 (1992).
 

 In the second place, the argument that the purchaser of a product has an implied contract to indemnify the seller is inconsistent with one of the underlying principles of product liability law. “[T]he ultimate liability resulting from a judgment determining that a product is defective or unreasonably dangerous should rest with the manufacturer and distributor of the product, who [reap] the profits from its manufacture and sale.”
 
 Wells
 
 v.
 
 Web Machinery Co.,
 
 20 Ill. App. 545, 561-62, 315 N.E.2d 301 (1974). The seller itself “may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end. . .
 
 .” Vandermark v. Ford Motor Co., 61 Cal.
 
 2d 256, 262, 391 P.2d 168, 37 Cal. Rptr. 896 (1964). The seller can also adjust its prices and pass along the costs in a way that the purchaser cannot. Id., 263.
 

 Finally, the requirement of duty is fundamental to the whole concept of tort liability. “A duty to act with
 
 *526
 
 reasonable care to prevent harm to a plaintiff which, if violated, may give rise to tort liability is based on a special relationship between the plaintiff and the defendant.” (Internal quotation marks omitted.)
 
 Burns
 
 v.
 
 Board of Education,
 
 228 Conn. 640, 646, 638 A.2d 1 (1994). “Where there is no duty, there can be no negligence.”
 
 Anthony
 
 v.
 
 Connecticut Co.,
 
 88 Conn. 700, 708, 92 A. 672 (1914). Examples of this abound in the law. One may decline to toss a lifesaver to a drowning man, no matter how easy the toss. One may watch a neighbor hammer on a dangerous explosive or walk into the jaws of a dangerous machine, no matter how easy it would be to call out a warning. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 56, p. 375 (collecting other examples). These extreme cases are ethically troubling, but they illustrate a fundamental legal axiom. Without duty, there is no liability.
 

 For these reasons, North American’s third party indemnification action against the Redmans cannot be sustained. “The existence of a duty of care ... is a matter of law for the court to decide.”
 
 Burns
 
 v.
 
 Board of Education,
 
 supra, 228 Conn. 646. The Redmans owed North American no duty. They may, of course, have owed a duty to the plaintiff, but that is not enough. The duty must be owed to North American. See
 
 Anthony
 
 v.
 
 Connecticut Co.,
 
 supra, 88 Conn. 708. There is nothing in the facts pleaded by North American in which such a duty may be found.
 

 The fact that the Redmans purchased their pool from North American is insufficient.
 
 Therrien
 
 is decisive of this point. Likewise, the fact that North American carefully pleads circumstances that would give rise to an application of the
 
 Kaplan
 
 doctrine is insufficient.
 
 Ferryman
 
 is decisive of this point. There must be an independent legal duty, not simply a dichotomy between active and passive negligence.
 
 See Ferryman v. Groton,
 
 supra, 212 Conn. 144.
 

 
 *527
 
 There is no duty here. For this reason, the first count of the third party complaint must be stricken.
 

 Ill
 

 CONTRIBUTION
 

 The Redmans’ motion to strike North American’s contribution count can be much more summarily decided. The arguments asserted by the Redmans are quite narrow. The broad policy arguments made with respect to the indemnification claim are not raised here. My decision on this issue is, consequently, quite narrow. The gist of the Redmans’ claim is one of timing. They essentially claim that the right to contribution attaches only after final judgment and, there being no final judgment here, North American’s contribution claim is premature. This claim is incorrect.
 

 The Redmans rely on § 52-572h (h) (2), which provides that “[a]n action for contribution shall be brought within two years after the party seeking contribution has made the final payment in excess of his proportionate share of the claim.” Section 52-572h is not, however, applicable to product liability actions. It is instead, as its title indicates, applicable to
 
 negligence
 
 actions. While North American asserts a negligence claim, it does so in the context of a product liability action, which is a statutory cause of action. General Statutes § 52-572n (a).
 

 As North American correctly points out, the product liability act has its own specific statute of limitation. “[A] product seller may implead any third party who is
 
 or may be
 
 liable for all or part of the claimant’s claim” within one year from the date the original action was returned to court. (Emphasis added.) General Statutes § 52-577a (b). That provision is controlling here. See
 
 Malerba
 
 v.
 
 Cessna Aircraft Co.,
 
 supra, 210 Conn. 195-96.
 

 
 *528
 
 The Redmans claim in passing that there is no common-law right to contribution at all, even if this action is timely filed. Suffice it to say that the contribution claim here is brought pursuant to statutory authority.
 
 Sims
 
 v.
 
 Honda Motor Co.,
 
 225 Conn. 401, 418, 623 A.2d 995 (1993);
 
 Malerba
 
 v.
 
 Cessna Aircraft Co.,
 
 supra, 210 Conn. 193-96.
 

 IV
 

 APPORTIONMENT
 

 The Redmans finally claim that “[apportionment of liability pursuant to C.G.S. Section 52-572h is barred as a matter of law because the applicable statute of limitations has elapsed.” For reasons just explained, the Redmans’ own description of this claim exposes its fatal flaw. Section 52-572h is not applicable to this action, and North American has not sought “apportionment” under that statute.
 

 The product liability act has its own apportionment mechanism. The judgment must “specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.” General Statutes § 52-572o (d). As already discussed, however, the product liability act has its own statute of limitations for the impleading of a third party. A third party complaint must be served within one year from the date the original cause of action was returned to the court. General Statutes § 52-577a (b). The third party complaint here was served within the requisite period of time.
 

 V
 

 CONCLUSION
 

 For the reasons stated above, the motion to strike is granted as to the first count of the third party complaint and denied as to the second count.